UNITED STATES of America, by Ramsey CLARK, Attorney General, Plaintiff,

v.

ALL STAR TRIANGLE BOWL, INC., a corporation, Harry K. Floyd, Carolyn R. Floyd, E. C. Floyd and Hanna Floyd, Defendants.

Civ. A. No. 68–111.

United States District Court
D. South Carolina,
Orangeburg Division.

Feb. 23, 1968.

Ramsey Clark, Atty. Gen., Stephen J. Pollack, Asst. Atty. Gen., Klyde Robinson, U. S. Atty., Columbia, S. C., and Maceo W. Hubbard, Atty., Dept. of Justice, for plaintiff.

Edward V. Mirmow, Jr., Orangeburg, S. C., for defendant.

ORDER

MARTIN, Chief Judge.

This action is brought by the Attorney General on behalf of the United States of America pursuant to the provisions of 42 U.S.C. § 2000a–5. Jurisdiction of this case is vested in this Court under provisions of 42 U.S.C. § 2000a–6(a).

The defendant, All Star Triangle Bowl, Inc., is a corporation organized under the laws of the State of South Carolina. Defendants Harry K. Floyd and Carolyn R. Floyd are the incorporators and sole stockholders of the defendant corporation and the defendant Harry K. Floyd manages and operates the bowling alley. Within the premises of All Star Bowling is located an eating facility which is principally engaged in selling food for consumption on the premises. The facility consists of a snack bar with nine stools and three tables with each table having four chairs. The facility is operated by the defendants E. C. Floyd and Mrs. Hanna Floyd.

Defendant Harry K. Floyd adopts and implements policy with respect to the manner in which all of the facilities of All Star Bowling are to be operated. All Star Bowling serves white members of the general public. The bowling alley and eating facility are held out as serving all patrons of the establishment known as All Star Bowling and all portions thereof.

Defendant Harry K. Floyd operated All Star Bowling from 1964 until June 1967 as an employee-manager of a previous owner. In June of 1967, defendants Harry K. Floyd and Carolyn R. Floyd assumed ownership and control of the bowling alley and defendants E. C. and Hanna Floyd undertook the operation of the eating facility situated within the bowling alley. At all times during this period a pattern and practice of denying to Negroes, because of their race, the utilization of the bowling and eating facilities of the bowling alley has been followed.

The gross income of Harry K. Floyd and Carolyn R. Floyd from the operation of the bowling alley facilities is approximately $1200.00 per week. The gross income of E. C. Floyd and Hanna Floyd from the operation of the eating facility within the premises of All Star Bowling is approximately $250.00 per week.

It is the contention of plaintiff that All Star Bowling is a place of public accommodation within the meaning of 42 U.S.A. § 2000a(b) (4) [1] and § 2000a(b) (3)[2] and that the practice and pattern of denying Negroes, because of their race, the utilization of the bowling and eating facilities is in violation of the Civil Rights Act of 1964. Plaintiff seeks to enjoin defendants from continuing to engage in racially discriminatory practices and acts.

As to 42 U.S.C. § 2000a(b) (4), it is plaintiff's position that the eating facility located within the bowling alley is a covered establishment and even assuming that the bowling alley is not *per se* a covered establishment within the meaning of the Act, it becomes a covered establishment because of the covered eating facility being physically located within the premises. This is a valid position. Adams v. Fazzio Real Estate Co., 268 F.Supp. 630 (E.D.La.1967). The question therefore becomes whether the snack bar is a covered establishment within the meaning of 42 U.S.C. § 2000a(b) (2).[3]

All parties to this action have stipulated, and the Court so finds, that the eating facility located within the premises of All Star Bowling is principally engaged in selling food for consumption on the premises. If the facility affects interstate commerce, it is a covered establishment.

42 U.S.C. § 2000a(c) provides that an establishment affects commerce if:

(a) it serves interstate travelers, or

(b) it offers to serve interstate travelers, or

(c) a substantial portion of the food which it serves has moved in interstate commerce.

These tests are in the alternative. It is not necessary that all three tests be met. In the instant case a substantial portion of the food served at the eating facility located within the premises of All Star Bowling has moved in interstate com-

---

**1.** "any establishment (A) (i) which is physically located within the premises of any *establishment otherwise covered by* this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."

**2.** "any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment."

**3.** "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility, *principally engaged in selling food* for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station."

merce.[4] Furthermore, while while no effort is apparently made to attract interstate travelers, neither is any effort made to bar interstate travelers from using the eating facility. It is conceded that an interstate traveler may use the facility provided he is a white person. Thus, whether or not the facility serves such travelers, it offers to serve interstate travelers.[5] The eating facility is, therefore, a covered establishment. Adams v. Fazzio Real Estate Co., supra, Newman v. Piggie Park Enterprises, 377 F.2d 433 (4th Cir. 1967). There being physically located within the premises of All Star Bowling a covered establishment, All Star Bowling is a covered establishment.

Defendants contend, however, that the eating facility was closed on February 9, 1968, prior to the commencement of this action on February 10, 1968, and that the bowling alley is not *per se* within the coverage of the Act. It is asserted by affidavit and by testimony that the eating facility is permanently and unconditionally closed and that food service will not be resumed in the future. It appears from the evidence, however, that at no time since the alleged closing of the eating facility has the bowling alley itself been in operation. All of the equipment for the eating facility is still in place and could as readily be put back into operation as the bowling alley itself. In view of the deeply rooted practice of

4. All food and other products used in the snack service have been purchased in the vicinity of Orangeburg whenever possible. The chart which is set out below is an accurate statement of the sources of supply from whom defendants obtain the food and other products sold in the operation of defendants' eating facilities located within the premises of All Star Triangle Bowl, Inc. The chart also represents the approximate total cost for food and other products.

(a) The approximate dollar amount of goods which defendants have purchased from each such supplier during the six months' period from August 1967 to February 1968; and

(b) The approximate percentage of such goods which have moved in interstate commerce.

| Supplier | Dollar Amount of purchases | Percentage in Commerce |
|---|---|---|
| (1) Shep-Pearlstine, Inc., Wholesale Grocery | 385.35 | 100% |
| (2) Azalea Meats | 460.00 | 0% |
| (3) Yarborough Distributing Company | 314.65 | 100% |
| (4) Hulsey's Food, Inc. | 208.95 | 100% |
| (5) Coca Cola Bottling of Orangeburg | 600.00 | 50% |
| (6) Pepsi Cola Bottling of Orangeburg | 260.00 | 50% |
| (7) Thrift Open Air Market | 280.00 | 100% |
| (8) Coble Dairy | Undetermined | Undetermined |
| (9) Lawson Coffee Company | 96.48 | 100% |
| (10) Coburg Dairy | 266.68 | 5% |
| (12) Pendarvis Candy & Tobacco Company | 590.71 | 100% |
| Total | $ 3747.30 | 80% |

The cost of the food items sold at the eating facility was approximately one-third of the selling price of those food items.

---

5. All Star Bowling is located in Orangeburg, South Carolina, approximately two blocks in a northerly direction from U. S. Highways 301 & 601, and approximately 0.2 miles in a southwesterly direction from the intersection of U. S. Highways 21 and 601 with South Carolina Highway 33. Russell Street, on which All Star Bowling is located, is also known as South Carolina Highway 33.

**303**

racial discrimination at the bowling alley (since 1964) which has been and is a covered establishment under 42 U.S.C. § 2000a(b) (4) the Court is compelled to issue a temporary injunction enjoining the operation of the bowling alley on a racially discriminatory basis. As stated in Gray v. Sanders, 372 U.S. 368, 376, 83 S.Ct. 801, 806, 9 L.Ed.2d 821 (1962); " * * * the voluntary abandonment of a practice does not relieve a court of adjudicating its legality, particularly where the practice is deeply rooted and long standing. For if the case were dismissed as moot, appellants would be 'free to return to * * * [their] old ways.' "

Having reached the determination that the bowling alley is a covered establishment within the meaning of 42 U.S.C. § 2000a(b) (4) it is unnecessary to determine at this time whether the bowling alley is *per se* a covered establishment.

It is therefore ordered, adjudged and decreed that the defendants Harry K. Floyd, Carolyn R. Floyd, E. C. Floyd and Hanna Floyd, and the defendant All Star Triangle Bowl, Inc., its respective officers, agents, representatives, employees and successors and all other persons in active concert or participation with them are hereby restrained and enjoined from engaging in any act or practice in the operation of All Star Bowling which directly denies any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of All Star Bowling on the ground of race, color, religion, or national origin.

It is further ordered, adjudged and decreed that this Order shall be effective from and after the date and time of filing of same with the Clerk of Court for the United States District Court, District of South Carolina and that this Order shall continue to be of full force and effect until such time as the defendants and/or their successors may appear and convince this Court that the operation of the bowling alley is not within the coverage of the Civil Rights Act of 1964 and amendments thereto and that the opera-

tion of the bowing alley on a racially discriminatory basis would not be in violation of that Act. Let copies of this Order be served, personally, on the parties to this Action.