UNITED STATES of America

v.

**BEACH ASSOCIATES, INC., a corporation, Edgar S. Kalb, Bay Carry-Out Shop, Inc., a corporation, William F. Kalb, George Bryant and Florence Bryant, d/b/a Bryant Real Estate Company.**

**Civ. No. 18759.**

United States District Court
D. Maryland.
July 15, 1968.

Ramsey Clark, Atty. Gen. of United States, Walter E. Barnett, Frank E. Schwelb, and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D. C., and Stephen H. Sachs, U. S. Atty., Baltimore, Md., for plaintiff.

C. Maurice Weidemeyer, Annapolis, Md., for defendants.

THOMSEN, Chief Judge.

This action was instituted by the Attorney General on behalf of the United States on September 21, 1967, under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. (the Act), to desegregate a bathing beach on the Chesapeake Bay in Anne Arundel County, Maryland, known as Beverley Beach Club, and a beach cottage or apartment house (the cottage) in the same area. The defendants are Beach Associates, Inc., a Maryland corporation which operates the Beverley Beach Club

and the cottage; Bay Carry-Out Shop, Inc., which owns and operates a restaurant immediately adjacent to the Beach Club; Edgar S. Kalb, who is president of Beach Associates, Inc., and manager of the Beach Club and of the cottage; William F. Kalb, the son of Edgar S. Kalb, who is the president and manager of Bay Carry-Out Shop, Inc.; and George and Florence Bryant, who are agents of Edgar S. Kalb for the rental of units within the cottage.

On May 17, 1968, plaintiff filed a motion for a preliminary injunction on the ground that irreparable injury would result to the plaintiff and to Negro citizens if the Beach Club and cottage remained racially segregated for the summer of 1968.

The defendants admit that Negroes are excluded from the facilities of Beverley Beach Club and from the cottage[1] and that the principal issues before the Court for decision are whether these facilities are within the coverage of the Act. By agreement of the parties, and in order to obviate the necessity for two hearings, the hearing on the motion for a preliminary injunction has been consolidated with the trial on the merits.

The facts are not in dispute and are set forth in a stipulation between the parties and in the depositions taken by plaintiff of several of the defendants. Upon this record, the Court enters the following Findings of Fact, Conclusions of Law, and Decree:

### FINDINGS OF FACT

1. Beach Associates, Inc., which operates a beach facility known as Beverley Beach Club in a development known as Beverley Beach, in Mayo, Maryland, was incorporated in the State of Maryland on December 12, 1966. The incorporators, each of whom owns 100 shares of stock except Esther K. Hancock, who owns 200 shares, are Esther K. Hancock, Raymond W. Kalb and Ann J. Kalb, his wife, Edgar S. Kalb and Adela P. Kalb, his wife. Edgar S. Kalb is the President and Manager of the corporation. Raymond W. Kalb is the brother and Esther K. Hancock the sister of Edgar S. Kalb, who is the dominant figure in the family.

2. The land and improvements described in Finding No. 1 are owned as tenants in common by Shirley K. Carter, Esther K. Hancock, Miriam Hancock, William S. Kalb, Dolores Wurzbacher, each of whom owns a ⅛th interest, and by Raymond W. Kalb and Ann J. Kalb, his wife, as tenants by the entireties as to ⅜ths, and Edgar S. Kalb and Adela P. Kalb, his wife, as tenants by the entireties as to ⅜ths. This property is leased by the owners to Beach Associates, Inc., at an annual rental of $16,800, and is operated by Beach Associates, Inc., as Beverley Beach Club. Shirley K. Carter, Miriam Hancock and Dolores Wurzbacher are nieces of Edgar S. Kalb, and William F. Kalb is his son.

3. Prior to the 1966 season, the property described in Finding No. 1 was leased from the owners and operated as Beverley Beach Club by a partnership known as Kal-Han Co. The partnership known as Kal-Han Co. was composed of Esther K. Hancock, Edgar S. Kalb and Adela P. Kalb, Raymond W. Kalb and Ann J. Kalb.

4. During the years 1951 to 1964, inclusive, the partnership known as the Kal-Han Co., operated the property described in Finding No. 1 as Beverley Beach Club, and operated a restaurant on that property during the periods in each of those years when this property was operated as a bathing beach.

5. After the conclusion of the 1964 season, and following the enactment of the Civil Rights Act of 1964, Kal-Han Co., the partnership, permanently discontinued the operation of the restaurant referred to in Finding No. 4.

---

[1]. The Bay Carry-Out Shop and its manager, however, deny any racially discriminatory policies or practices. They admit that Bay Carry-Out Shop is a place of public accommodation within the meaning of the Act.

6. Beverley Beach Development Company, Inc. (the Development Company) is a Maryland corporation engaged in the real estate business. In the fall of 1964, the officers of the Development Company were Raymond W. Kalb, President; Esther K. Hancock, Vice-President; and Edgar S. Kalb, Secretary-Treasurer. These three persons were also the directors of the Development Company. In the fall of 1964, the Development Company, knowing that the Kal-Han Company was going to discontinue the sale of food, decided to put up a building for the sale of food as close as possible to the Beverley Beach Club and sell or lease the building. In accordance with that decision, Edgar S. Kalb designed, and the Development Company built a building immediately adjacent to the Beverley Beach Club. This building is now called the Bay Carry-Out Shop. On behalf of the Development Company, Edgar S. Kalb then arranged that his son, William F. Kalb, and his nieces, Shirley K. Carter, Miriam Hancock and Dolores Wurzbacher, should purchase the completed building.

7. Bay Carry-Out Shop, Inc., a Maryland corporation, was incorporated on March 5, 1965, in order to implement the plans described in Finding No. 6. William F. Kalb is the President and Manager, Miriam Hancock is the Vice-President, Shirley K. Carter is the Secretary and Dolores Wurzbacher is the Treasurer of Bay Carry-Out Shop, Inc.

8. Shortly after its incorporation Bay Carry-Out Shop, Inc., purchased the land and improvement described in Finding No. 6 from the Development Company for a consideration of $45,000. This land comprises parts of lots 70–76A, inclusive, in a real estate sub-division known as Beverley Beach Company. The building now used as the Bay Carry-Out Shop had already been constructed at the time of the purchase.

9. Beginning with the summer of 1965, Bay Carry-Out Shop has been primarily operated to provide food for patrons of the Beverley Beach Club. The menu offered by Bay Carry-Out Shop is more varied than that offered by the restaurant which was operated on the premises of the Beverley Beach Club before the effective date of the Act. There is free access between the Beach and the eating facility, and 75–80% of the customers of Bay Carry-Out Shop come from, and return to Beverley Beach Club. The two facilities are open on the same days, and both are closed during the winter months. During the season, Beverley Beach Club is open from approximately 9:00 A.M. to 11:00 P.M., while Bay Carry-Out Shop is open from approximately 10:00 A.M. to 10:00 P.M. There are signs on the premises of the Beverley Beach Club which point to the Bay Carry-Out Shop. These signs, according to the testimony of Edgar S. Kalb, were put up at the request of Beverley Beach Club's employees because "people were setting them crazy, asking how could they go get something to eat."

10. Bay Carry-Out Shop sells food, including soft drinks, beer, coffee, hot dogs, hamburgers, potato chips, cole slaw, barbecue, tuna fish, ham sandwiches, cheese sandwiches, cheeseburgers, a variety of sea foods, and other items. It is sold in such form that it is ready to be consumed.

Bay Carry-Out Shop has two counters, with a common kitchen. The part of the building in which one of the counters is located opens onto a public street, contains a small area in which food may be consumed and serves all races. There is no passage open to the public from that part of the building to the other part, in which is located the other counter, which opens only onto the Beach Club property and serves only patrons of the Beach Club. Although a patron of the Beach Club could buy food at that counter and eat it in his car or take it home, almost all of the food sold at that counter is consumed on the Beach Club property.

11. On the premises of Beverley Beach Club, immediately adjoining Bay Carry-Out Shop, there is located a large building which is under a roof and en-

tirely enclosed. This building contains tables and chairs at which approximately 200 persons may be seated to eat, to rest, or to be protected from inclement weather. The distance between Bay Carry-Out Shop and the nearest of these tables is approximately 30 to 45 feet.

12. William F. Kalb, the manager of Bay Carry-Out Shop, is employed by Beach Associates, Inc., during the off season.

13. There has been no correspondence between Beach Associates, Inc., and Bay Carry-Out Shop, Inc.

14. As a practical matter, Beverley Beach Club and the Bay Carry-Out Shop are operated by Edgar S. Kalb and members of his family in conjunction with one another, so that bathers at Beverley Beach may obtain and eat food during their visit. While legal title to the two establishments is separate, the Court finds that the principal purpose of this technical separation is to avoid coverage under the Civil Rights Act of 1964 and to exclude Negroes from the Beverley Beach Club. The separation of title has no effect on the operation of the facilities for the benefit of the patrons of the Beach Club.

15. Beverley Beach Club distributes folders which solicit patrons from other states to come to the beach; the folders provide directions, and suggest that the patrons bring their friends. Since the majority of Bay Carry-Out Shop's patrons come from Beverley Beach Club, and since Bay Carry-Out Shop sells to all persons indiscriminately, the Court finds that Bay Carry-Out Shop serves and offers to serve interstate travelers. It is not disputed that a substantial portion of the food sold by Bay Carry-Out Shop has moved in interstate commerce.

16. In addition to bathing beach facilities, there is located on the Beverley Beach Club property operated by Beach Associates, Inc., a penny arcade containing pinball machines, coin-operated miniature bowling, other coin-operated amusement devices, and a build-ing in which a bingo game is operated. The beach facilities, the amusement devices and the bingo games are open to the patrons of the beach who care to participate therein. There are benches adjacent to the miniature bowling, seating approximately twelve people. There are no roller coasters, ferris wheels, carousels or other similar devices. Many of the people who come to the kiddie rides and other amusement devices do so to watch and care for their children, some of whom have moved in interstate commerce in order to come to the establishment.

17. Edgar S. Kalb is the manager of a building in the Beverley Beach subdivision of Mayo, Maryland, which is owned by Shirley K. Carter, Miriam Hancock, Dolores Wurzbacher, Esther K. Hancock and William F. Kalb, as tenants in common with respect to a ⅝th share, by Raymond W. Kalb and Ann J. Kalb as tenants by the entireties with respect to a ⅖th share, and by Edgar S. Kalb and Adela P. Kalb as tenants by the entireties with respect to a ⅖th share. George and Florence Bryant are rental agents for this building on behalf of the owners, but all rents are approved by Edgar S. Kalb.

18. The building described in Finding No. 17 contains six complete and separate apartments. Except as indicated in Finding No. 20, infra, each apartment has a living room with a table, chairs and a cot, and two bedrooms, each with a double bed and built-in closet. Each apartment has a kitchen with a gas stove operated by metered gas, an electric refrigerator, a sink with running hot and cold water, a kitchen table, chairs and a built-in cupboard. Each apartment has a separate bathroom containing a wash basin and a toilet. The building is unheated and therefore suitable only for summer rentals. Each apartment is furnished with dishes and cooking utensils, but tenants must bring their own bed linens, towels, wash cloths and blankets. Each apartment has its own entrance door and rear door. Apartments are

rented on a weekly basis. A majority of the persons renting these apartments do so for one week only. Rentals may be booked in advance and reservations therefor made only with the real estate agency of George Bryant, or the real estate agency of Lydia A. Cole, or directly with the owners.

19. Advertising circulars have been distributed by real estate agents, including George and Florence Bryant, which advertise the availability for rental of the apartments in the apartment building referred to in Finding No. 17, and also advertise for rent cottages in the Beverley Beach sub-division which are owned by private individuals other than the defendants herein. These circulars have contained the statement "occupancy limited to members of the white race only." The rental agreements which George and Florence Bryant have used to rent apartment units in the apartment building referred to in Findings 17 and 18 have contained the statements "white race only" and "occupancy of the cottage hereby rented is restricted to the white race only."

20. Since the institution of this action, the defendants have been advised by the Anne Arundel County Department of Inspection that said apartment building cannot be licensed for use as a multiple dwelling because it fails to meet the requirement of a recent ordinance of the County Council of Anne Arundel County. Therefore, apartments in that building will not be offered for rent during the summer of 1968. There are no present plans to make the necessary alterations. Five apartments are currently being used as a storage warehouse and one is used as a dormitory for lifeguards employed by Beach Associates, Inc. There are no present plans to tear down the building.

21. There is a sign at the main entrance to the property leased by Beach Associates, Inc., and operated as a bathing beach under the trade name of Beverley Beach Club, which states that the bathing beach is not a public beach, and that no invitation to the public is extended or implied. The tickets given to persons parking their automobiles on the parking area in the vicinity of the buildings operated as Beverley Beach Club have printed upon them the following: "This is a private club—not a public park." Defendants concede that Beverley Beach Club is not in fact a private club, and that this type of advertising is done only to keep out people they do not want to admit.

22. It is undisputed that Negroes are excluded from the facilities of Beverley Beach Club and from the apartments in the cottage managed by Edgar S. Kalb which are described in Findings 17 and 18. It has been stipulated by the parties that Bay Carry-Out Shop, Inc., has not refused to sell to any person. Bay Carry-Out Shop, Inc., and William F. Kalb, however, have participated with Edgar S. Kalb and Beach Associates, Inc., in transactions designed to enable Beverley Beach Club to remain effectively segregated.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the defendants and of the subject matter of this action. 42 U.S.C. § 2000a-6.

2. Bay Carry-Out Shop, Inc., serves and offers to serve interstate travelers, and a substantial portion of the food which it sells has moved in interstate commerce. Since the food is sold by Bay Carry-Out Shop in a form fit for consumption on the premises, that establishment is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b) (2). Newman v. Piggie Park Enterprises, 377 F.2d 433 (4 Cir. 1967), modified as to counsel fees, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 1263 (1968); see Gregory v. Meyer, 376 F.2d 509 (5 Cir. 1967); Adams v. Fazzio Real Estate Co., 268 F.Supp. 630 (E.D.La.1967).

3. Section 201(b) (4) of the Act, 42 U.S.C. § 2000a(b) (4) provides:

"(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this sub-chapter if

its operations affect commerce, or if discrimination or segregation by it is supported by State action:

> \* \* \* \* \* \*

> "(4) any establishment (A) (i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."

Plaintiff relies on (b) (4) (A) (ii) and (b) (4) (B), contending that Beverley Beach Club is (A) (ii) an establishment within the premises of which is physically located a covered establishment (Bay Carry-Out Shop, Inc.), and that Beverley Beach Club is also (B) an establishment which holds itself out as serving patrons of such covered establishment (Bay Carry-Out Shop, Inc.).

■ 4. The Court concludes that under all the facts and circumstances of this case, set out in the Findings of Fact, above, the premises on which the Beach Club and Bay Carry-Out Shop, Inc., are located should be considered as a unit, and that Bay Carry-Out Shop, Inc., should be held to be physically located within the premises of the Beverley Beach Club, within the meaning of section 2000a(b) (4) (A) (ii).

■■ 5. Moreover, it appears from the evidence that Beverley Beach Club holds itself out as serving patrons of Bay Carry-Out Shop, Inc., a covered establishment, by supplying the tables at which most of such patrons consume the food purchased at the shop, which provides no such facilities for those customers. Beverley Beach Club therefore is covered by section 2000a(b) (4) (B), quoted above. Courts deal with the substance, rather than the form of transactions, and will not permit important legislative policies to be defeated by artifices affecting legal title but not the practical consequences of the existing situation. Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); United States v. Reading Co., 253 U.S. 26, 62, 40 S.Ct. 425, 64 L.Ed. 760 (1920); Chicago, M. & St. Paul R.R. Co. v. Minneapolis Civic & Commerce Association, 247 U.S. 490, 501, 38 S.Ct. 553, 62 L.Ed. 1229 (1918); see also United States v. Northwestern Louisiana Restaurant Club, 256 F.Supp. 151 (W.D.La. 1966), and Bradshaw v. Whigam, 11 Race Rel.L.Rep. 934 (S.D.Fla.1966), applying this principle to hold that nominal private clubs are subject to Title II.

■ 6. Without question Beverley Beach Club has advertised for out-of-state patrons, and its operations, as well as those of Bay Carry-Out Shop, Inc., affect interstate commerce. Accordingly, Beverley Beach Club is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b).[2] Evans v. Laurel Links, 261 F.Supp. 474 (E.D.Va.1966); Adams v. Fazzio Real Estate Co., 268 F.

---

2. The following facts in this case, among others, require the conclusion that any separation between the two legal entities is insubstantial and intended simply to defeat coverage under the Civil Rights Act:

   (a) There is free access between the two properties;

   (b) They are open at the same time;

   (c) Most of Bay Carry-Out Shop's customers come from Beverley Beach Club;

   (d) Bay Carry-Out Shop replaced a restaurant on the beach property shortly after the passage of the Civil Rights Act of 1964;

   (e) There are signs on the beach pointing to the Bay Carry-Out Shop, and tables on the beach property less than 40 feet from the food facility;

   (f) The Kalb family controls both establishments, as well as the Development Company, and the dealings between the various family enterprises were not arm's length transactions;

   (g) The defendants have, in their advertising, held out Beverley Beach Club to be a private club, although they have known that it is not one;

   (h) The provision of food for beach patrons is generally an integral part of the operation of a beach, and the Bay Carry-Out Shop was designed to help attract customers to the beach.

808

Supp. 630 (E.D.La.1967); United States v. All Star Triangle Bowl, Inc., 283 F.Supp. 300 (1968) (No. 68–111 D.S.C. February 23, 1968); Scott v. Young, 12 Race Rel.L.Rep. 428 (E.D.Va.1968) (consent judgment); and see opinion of Mr. Chief Justice Warren in Drews v. Maryland, 381 U.S. 421, 428, n. 10, 85 S.Ct. 1576, 14 L.Ed.2d 693 (1965). See also Nesmith v. Young Men's Christian Association of Raleigh, N. C., 397 F.2d 96 (1968) (No. 11,931, 4 Cir. June 7, 1968).

7. It is not necessary to decide whether Beverley Beach Club is a place of exhibition and entertainment within the meaning of 42 U.S.C. § 2000a(b) (3).

■ 8. The beach apartments, managed by the defendant Edgar S. Kalb and offered for rent by the defendants George and Florence Bryant, provide lodging for transient guests within the meaning of 42 U.S.C. § 2000a(b) (1). United States v. Sadler (No. 570 E.D. N.C. January 15, 1968). See Hearings before Subcommittee No. 5 of the Committee on the Judiciary, House of Representatives, 88th Cong., 1st Session, Part II, Series No. 4, p. 1402; Hearings before the Senate Commerce Committee, 88th Cong., 1st Session, in S. 1732, July 8, 1963; Series 26, p. 213. The right of any citizen, regardless of race, to rent these apartments is also protected by 42 U.S.C. § 1982. Jones v. Mayer, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

■ 9. The discontinuance, since this action was instituted, of the use of the beach apartments as a place of lodging for summer guests does not defeat plaintiff's right to relief. While five of the apartments are now being used for storage, there are no plans to tear the building down, and it can be used for its original purpose if the defendants comply with local ordinances. Under these circumstances, the Court is compelled to issue an injunction enjoining the operation of the lodging facility on a racial discriminatory basis. As stated

in Gray v. Sanders, 372 U.S. 368, 376, 83 S.Ct. 801, 9 L.Ed.2d 821 (1962): " * * * the voluntary abandonment of a practice does not relieve a court of adjudicating its legality, particularly where the practice is deeply rooted and long standing. For if the case were dismissed as moot, appellants would be 'free to return to * * * [their] old ways.'" United States v. All Star Triangle Bowl, Inc., 283 F.Supp. 300 (1968) (No. 68–111 D.S.C. February 23, 1968); see also, Cypress v. Newport News Gen., etc., Mem. Hosp., 375 F.2d 648, 657–658 (4 Cir. 1967).

■ 10. In cases of racial discrimination " * * * the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965). Where, as here, defendants have represented the Beverley Beach Club to be a private club, excluded non-whites from it, and stated in a variety of ways that the units in the cottage were available to whites only, notice to the general public that the beach and cottage are places of public accommodation, that they are not private, and that they are available to persons of all races on an equal basis is the appropriate means of eliminating the effects of the past discrimination practiced by the defendants. See, e. g., United States v. Coffee Pot, 12 Race Rel.L.Rep. 1515 (M.D.Ala.1967). Since, however, the apartments are not now being rented, no notice that they are available should be presently required.

■ 11. The foregoing Conclusions of Law as to coverage under the Act and as to the relief required are further bolstered by the holdings of the Supreme Court of the United States and of the Court of Appeals for the Fourth Circuit that the Civil Rights Act is to be afforded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness

and humiliation of racial discrimination. Hamm v. Rock Hill, 379 U.S. 306 (1964); Nesmith v. Young Men's Christian Association of Raleigh, N. C., 397 F.2d 96 (1968) (No. 11,931, 4 Cir. June 7, 1968); Miller v. Amusement Enterprises, 394 F.2d 342 (1968) (5 Cir. April 8, 1968 —en banc).

DECREE

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is hereby ordered that the defendants, their officers, agents, employees and successors, and all those in active concert or participation with them, be and they are hereby permanently enjoined from

1. Engaging in any act or practice in the operation of the Beverley Beach Club, the Bay Carry-Out Shop, Inc., or the apartment building described in the foregoing Findings of Fact, which directly or indirectly denies any person the full and equal enjoyment of the goods, services, facilities, advantages and accommodations of any of the aforesaid establishments on the ground of race, color, religion or national origin;

2. Holding out or representing Beverley Beach Club or any of the other facilities described in the foregoing Findings of Fact as being a private club or any type of establishment other than a place of public accommodation;

3. Failing or refusing, within fifteen days after service of a copy of this Order on Edgar S. Kalb or the attorney of record for the defendants, to replace all notices, advertising, tickets and other literature or materials which represent any of these facilities as being a private club, with similar notices, advertising, tickets and other literature or materials which represent said facilities as being places of public accommodation open to all persons of all races without discrimination.

Each party shall bear its own costs.

The Court retains jurisdiction of the action for all purposes.