UNITED STATES of America,
Plaintiff,

v.

JOHNSON LAKE INCORPORATED, a corporation, Johnson Lake Club, Incorporated, a corporation, and Robert H. Johnson and Robert H. Johnson, Jr., Individually and as officers of Johnson Lake, Inc., and Johnson Lake Club, Inc., Defendants.

Civ. A. No. 5300–68.

United States District Court,
S. D. Alabama, S. D.

May 19, 1970.

Joseph Rich, Atty., Dept. of Justice, Washington, D. C., C. S. White-Spunner, U. S. Atty., Mobile, Ala., for plaintiff.

M. A. Marsal, Mobile, Ala., for defendants.

PITTMAN, District Judge.

This action was instituted by the Attorney General on behalf of the United States on December 27, 1968, pursuant to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., to desegregate Johnson Lake Club, Inc., hereinafter referred to as Johnson Lake, located in the 8-Mile Community of Prichard, Alabama. On December 31, 1969, a hearing was held and evidence was presented by both parties. With leave of the court, the United States Government filed an amendment adding additional parties which was served on said new defendants on, to wit, April 1, 1970. The attorneys of record, who have heretofore appeared for the other defendants, have advised the court they represent the new defendants. The plaintiff and all defendants submit this case for the court's consideration on the pleadings, evidence, and arguments heretofore made. The court having duly considered the evidence and the arguments of counsel, makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Johnson Lake Club, Inc., known as Johnson Lake, is a recreational complex of about 50 acres in the 8-Mile Community of Prichard, Alabama, near Mobile, Alabama.

2. The following facilities are offered for the use of the patrons of Johnson Lake:

a) Swimming area (man made);

b) Picnic area;

c) Dancing area;

d) Snack bar;

e) Four pool tables;

f) Juke box;

g) Coin gun machine.

3. The real property upon which Johnson Lake is located is owned by Robert H. Johnson, Sr., and Ernestine S. Johnson, two of the defendants in this case.

4. Defendant Robert H. Johnson, Jr., owns the Johnson Lake Snack Bar in partnership with his mother Ernestine S. Johnson. The snack bar was a gift from his father Robert H. Johnson. All the Johnsons participated in the operation of the snack bar.

5. Johnson Lake was first opened in 1951 under the name Johnson Lake. Shortly thereafter it was incorporated under the name Johnson Lake, Incorporated.

6. The officers of Johnson Lake, Inc., were Ernestine S. Johnson, Secretary, and Robert H. Johnson, Sr., President.

7. In 1964 after the passage of the Civil Rights Act, Johnson Lake was incorporated as Johnson Lake Club, Inc. The officers of Johnson Lake Club, Inc., were Ernestine S. Johnson, Secretary-Treasurer, and Robert H. Johnson, Sr., President.

8. All of the members of the Board of Directors of Johnson Lake Club, Inc., are related to Robert H. Johnson, Sr., either by blood or by marriage.

9. Robert H. Johnson and Ernestine S. Johnson own the entire issue of stock in Johnson Lake, Inc.

10. In June of 1965 Johnson Lake Club, Inc., advertised that all of the "members" who had purchased membership cards could request a refund and, in fact, refunded membership fees to those who so requested.

11. Johnson Lake Club, Inc., which never attained private club status, disregarded all claim to being a private club from June 1965 until immediately after this suit was filed.

12. Johnson Lake was open to the general white public from the summer of

1965 until January 1969 immediately after this suit was filed.

13. In January 1969 after this suit was filed, Johnson Lake again began requiring the possession of a membership card for admission to its facilities.

14. The only qualification for admission to membership in Johnson Lake Club, Inc., is previous patronage at the Johnson Lake facilities.

15. No Negro has ever used the Johnson Lake facilities.

16. None of the policies of Johnson Lake Club, Inc., are determined by vote of the membership.

17. There is no membership committee composed of the members of Johnson Lake.

18. The membership has no proprietary interest in Johnson Lake Club.

19. Expulsion of a member can and is carried out summarily by Robert H. Johnson Sr., without any consultation with the membership.

20. Profits accrued from the operation of Johnson Lake are not shared with the membership.

21. There is an admission fee charged each member for the use of the Johnson Lake facilities.

22. There is only a nominal amount (two dollars) charged members as a membership fee.

23. At the present time the "membership" consists of approximately 1,800 teenagers and between 800 and 900 families.

24. Johnson Lake is located on Cheeseman Road, .03 miles from U. S. Highway 45.

25. A large electric sign with the name Johnson Lake and an arrow pointing in the direction of the Johnson Lake facility is located on U. S. Highway 45 at the intersection with Cheeseman Road.

26. The facilities of Johnson Lake have been advertised on WABB Radio in Mobile and in two newspapers, the *Mobile Press* and the *Mobile Register*.

27. WABB Radio transmits across the state line into Florida and Mississippi, as well as in the State of Alabama.

28. The defendant has caused an advertisement to be placed on WABB Radio which announced that a band from outside the State of Alabama, "the Atomic Figs," would perform at a dance held at the Johnson Lake facility. The band did so perform.

29. During the last week in May and the first week of June 1968, Robert H. Johnson, Sr., caused an advertisement to be placed in the *Mobile Press* and *Mobile Register* stating that it was the policy of Johnson Lake to serve the better class of white people.

30. A "White Only" sign was posted at the entrance to Johnson Lake until the time this suit was filed.

31. At the present time a sign reading, "Johnson Lake Club, Members Only" is posted at the entrance to the property.

32. The Johnson Lake facilities can accommodate more than 700 persons in one day.

33. The swimming pool and dance area are frequented by spectators as well as swimmers and dancers.

34. The juke box at Johnson Lake was manufactured outside the State of Alabama.

35. A substantial number of the records played on the juke box were manufactured outside the State of Alabama.

36. The four coin-operated pool tables used for the entertainment of the patrons of Johnson Lake were manufactured outside the State of Alabama.

37. On at least one occasion a church group travelled from outside the State of Alabama to use the Johnson Lake facilities.

38. The Johnson Lake snack bar sells food items including soft drinks, candy, hamburgers, hot dogs, corn dogs, milk and french fries over the counter for consumption on the premises. Many of the ingredients in these foods originate outside the State of Alabama.

39. The snack bar offers to serve swimming, dancing and picnicking patrons.

40. Unless restrained by the court the defendants will continue to operate Johnson Lake and the facilities therein on a racially discriminatory basis.

41. Johnson Lake Club, Inc. was formed for the primary purpose of denying use of the facilities of Johnson Lake to members of the Negro race because of their color.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this action under Section 207(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–6(a).

2. The Attorney General is authorized to institute this action on behalf of the United States pursuant to Section 206(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–5(a).

3. Johnson Lake Club, Inc. is not a private club or other establishment not in fact open to the public under Section 201(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(e).

4. Johnson Lake is a place of entertainment within the meaning of Section 201(b) (3) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(b) (3). The word "entertainment" as used in this subsection was intended to carry its ordinary meaning and, accordingly the term "place of entertainment," "includes both establishments which present shows, performances and exhibitions to a passive audience and those establishments which provide recreational or other activities for the amusement or enjoyment of its patrons." Miller v. Amusement Enterprises, 394 F.2d 342, 350–351 (5th Cir. 1968) (en banc); Evans v. Laurel Links, 261 F.Supp. 474 (E.D.Va.1966); Cf. Nesmith v. YMCA of Raleigh, N. C., 397 F.2d 96, 100 (4th Cir. June 7, 1968). Moreover, since many of the people who pay for admission to the swimming and dancing facilities come there to be entertained by watching others participate in the activities available, Johnson Lake "presents a performance for the amusement or interest of a viewing public" and is therefore a place of entertainment within the meaning of the Act. Miller, supra; Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969).

5. The operations and activities conducted and sponsored by Johnson Lake affect commerce within the meaning of 42 U.S.C. § 2000a(c) (3). Miller, supra; Daniel, supra. Since the record makes it clear that "performers" at Johnson Lake include interstate travelers, the "sources of entertainment" have moved in commerce. Id. Miller, supra, 394 F.2d at 349. Moreover, other items offered for exhibit in and entertainment to the public at Johnson Lake, including, e. g., four pool tables and a juke box which are manufactured out-of-state, have moved in interstate commerce. It is immaterial that they have now come to rest in the state if at one time they moved in commerce. Miller, supra, at 351–352; see Daniel v. Paul, supra. The records played on the juke box are also "sources of entertainment [which] move in commerce." Id. 395 U.S. at 308, 89 S.Ct. at 1702.

6. Johnson Lake is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b) (4), because there is located on the premises a covered establishment and a covered establishment is held out as serving patrons of the lake. Evans v. Laurel Links, 261 F.Supp. 474 (E.D.Va.1966); United States v. Fraley, 282 F.Supp. 948 (M.D.N.C.1968); United States v. All-Star Triangle Bowl, 283 F.Supp. 300 (D. S.C.1968); Adams v. Fazzio Real Estate Co., 268 F.Supp. 630 (E.D.La.1967), aff'd 396 F.2d 146 (5th Cir. 1968); United States v. Beach Associates, Inc., 286 F.Supp. 801 (D.Md. July 15, 1968). The establishment which confers derivative coverage on Johnson Lake is the Johnson Lake Snack Bar and a substantial portion of the food served by the snack bar has moved in interstate commerce. Katzenbach v. McClung, 379 U. S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). It is apparent from the legisla-

tive history of 42 U.S.C. § 2000a(b) (4) that both sponsors and opponents recognized that it would confer coverage on all of the facilities of a retail establishment which had a lunch counter on its premises, even if the retail establishment was not otherwise covered.[1]

■ 7. The foregoing *Conclusions of Law* as to coverage under the Act are further bolstered by the holdings of the Supreme Court of the United States and of the Court of Appeals for the Fourth Circuit that the Civil Rights Act is to be afforded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination. Hamm v. Rock Hill, 379 U.S. 306, 85 S. Ct. 384, 13 L.Ed.2d 300 (1964); Nesmith v. YMCA of Raleigh, N. C., *supra*. Miller v. Amusement Enterprises, *supra*, 394 F.2d at 349, 353; and see United States v. Beach Associates, Inc., *supra*.

■ 8. The acts and practices of the defendants, in excluding Negroes from Johnson Lake, are in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. Defendants conduct constitutes a "pattern and practice" of discrimination within the meaning of 42 U.S.C. § 2000a–5.

■ 9. The court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future. Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d

709; United States v. Beach Associates, Inc., *supra*. The defendants should be required to take reasonable steps to inform the public that the services, accommodations and facilities of Johnson Lake will be afforded to all persons without regard to race, color, religion or national origin, and to replace all discriminatory notices with others explaining the new policy of nondiscrimination. See particularly, *Beach Associates, supra*.

■ 10. A club formed for the primary purpose of excluding Negroes on account of their race is not a private club or other establishment within the meaning of Section 201(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (e).

Pursuant to the foregoing *Findings of Fact* and *Conclusions of Law*, it is hereby ordered that the defendants, their officers, agents, employees and successors, and all of those in active concert or participation with them or with any of them, are hereby enjoined from:

1. Refusing to admit Negroes to the premises of Johnson Lake, or any portion thereof, upon the same basis and under the same conditions as other members of the general public are admitted;

2. Failing or refusing to make any of the goods, services, facilities, privileges, advantages or accommodations of Johnson Lake available to Negroes upon the same basis as they are made available to other members of the general public;

---

[1]. "In addition to the enumerated establishments, the bill covers establishments which either contain, or are located within the premises of, any establishment that is specified in the bill. This would mean, for example, that retail stores, which are ordinarily excluded from the bill, that retail stores which contain public luncheon counters or restaurants would thereby also be subject to the nondiscriminatory provisions of the bill." Remarks of Congressman Emanuel Celler, Hearings, House Committee on Rules, 88th Congress 2d Session, on H.R. 715 p. 92 (1964).

"Plaintiff department store or other retail establishment would not be subject as such to the restrictions of Title II. But if it contains a public lunchroom or lunch counter, it would be required to make *all its facilities*, not simply *its eating facilities*, available on a nondiscriminatory basis." (Emphasis added) Remarks of Senator Magnuson, 110 Cong. Rec. 7406–7407 (April 9, 1964) (Proceedings in U. S. Senate.) Both Congressman Celler and Senator Magnuson were among the principal spokesmen for the bill.

3. Engaging in any acts or practices which directly or indirectly deprive any person of the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Johnson Lake without discrimination or segregation on the grounds of color or race.