**Emma CRADDOCK et al., Plaintiffs,**

**v.**

**Austin HILL et al., Defendants.**

**Civ. A. No. 17906-3.**

United States District Court,
W. D. Missouri, W. D.

Oct. 2, 1970.

Legal Aid and Defender Society, Kansas City, Mo., for plaintiffs.

Elmore G. Crowe, Curtis J. Quimby, and Edw. D. Summers, Jefferson City, Mo., for defendants.

JUDGMENT OF DISMISSAL

WILLIAM H. BECKER, Chief Judge.

This is an action under the Federal Civil Rights Act, Section 1983, Title 42, United States Code, and Section 1343, Title 28, United States Code, in which plaintiffs allege that they have been denied due process of law by the defendant state officers in being required by them to wait excessive amounts of time before being informed by defendants of their eligibility for welfare benefits. In their amended complaint, plaintiffs state that they are citizens of the United States residing in Jackson County, Missouri, who are eligi-

ble for Aid to Dependent Children (and who represent a class of other claimants for Aid to Dependent Children as well as Aid to the Blind, Old Age Assistance, Aid to the Permanently and Totally Disabled, and Medicaid) "who are forced to wait longer than thirty days after the application to receive the public assistance for which they are eligible." It is specifically alleged that plaintiff Craddock was not notified until some 57 days, and not paid until 74 days, after her application for A.D.C.; that plaintiff Warren was not notified of her eligibility for A.D.C. until some 80 days after her application and did not receive her initial check until 129 days thereafter; that plaintiff Wells was not notified of her eligibility for A.D.C. until 85 days after her application and did not receive her first check until 106 days after her application; that plaintiff Hines was not notified of her eligibility for A.D.C. and Medicaid until 61 days after her application and had not yet received her first check; and that plaintiff Payne was not notified of her A.D.C. eligibility until 108 days after her application and had not yet been paid. Plaintiffs state that such delay in notification violates Section 2200(b) (3) of the Handbook of Public Assistance Administration, Part IV, of the Department of Health, Education, and Welfare, requiring that "[p]rompt action will be taken on each application within reasonable state-established time standards (which, effective July 1, 1968, will not exceed thirty days)" and Section 602(a) (10), Title 42, United States Code, which provides that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." Plaintiffs request by way of relief:

▮ "that this court order defendants to pay to plaintiffs those amounts of public assistance benefits lost because of defendants' delay in acting on plaintiffs' applications; [2] that this court order defendants to furnish an accounting of all benefits wrong-fully denied because of past violations of the requirement of prompt action; [3] that this court enter a declaratory judgment pursuant to 28 U.S.C.A. Section 2201 declaring the present dilatory practice of defendants contrary to law; [4] that this court enter permanent injunction that defendants comply with the state and federal laws requiring that initial benefit payments be made to all applicants for A.D.C., O.A.A., A.B., P.T.D., and Medicaid within thirty days of the date of application; [5] that plaintiffs and the class they represent have all other just and proper relief."

On March 4, 1970, defendants filed their original motion to dismiss. Therein, they asserted (1) that no claim was stated by which plaintiffs could invoke federal jurisdiction under Section 1343(3) and (4) of Title 28, United States Code, because no violation of any distinctly *civil* right was alleged (citing McCall v. Shapiro (C.A.2) 416 F.2d 246); (2) that the amount in controversy was less than $10,000 as required for jurisdiction under the "federal question" statute, Section 1331, Title 28, United States Code; (3) that the suit was against the State of Missouri and was therefore prohibited by the Eleventh Amendment; and (4) that the suit against a State cannot be maintained under the Federal Civil Rights Act. That motion was denied without prejudice "to renewal of the grounds therefor" on April 23, 1970. In denying the motion, this Court stated as follows:

"Under recent decisions it is conceivable that plaintiffs may have a right or privilege legally protectable as a civil right under Section 1983, Title 42 U.S.C. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (March 23, 1970). Jurisdiction may exist under Section 1343(3) and (4), Title 28, U.S.C. Missouri's immunity to suit may not bar this action. The questions should be decided when the factual background is fully developed. Therefore, the motion to dismiss will

be denied without prejudice to renewal of the contentions on which it is based."

Now, on September 4, 1970, defendants have filed their "motion to renew contentions of motion to dismiss," raising essentially the same objections to federal jurisdiction as were raised in the motion of March 4, 1970. After seeking and being granted an extension of time in which to file suggestions in opposition to the motion, plaintiffs filed their suggestions on September 23, 1970. In those suggestions, among other things, plaintiffs contended that federal jurisdiction had been properly invoked in this case because a denial of a distinctly civil right had been stated in the arbitrary denial of due process by defendants in failing to make timely notifications and payments as required by the federal statutes. In support of that contention, plaintiffs state as follows:

"[I]t is now abundantly clear that Defendants have acted arbitrarily in dealing with the Plaintiffs in this action. This Court in its Order denying Defendants' first Motion to Dismiss, stated at page 3 of said Order, that the questions raised by Defendants' Motion should be decided 'when the factual background is fully developed.' The parties have since engaged in discovery proceedings, and certain facts have come to light which demonstrate Defendants' arbitrary conduct.

"Plaintiffs respectfully direct to the Court's attention Defendants' Answers to Plaintiffs' Interrogatories. Defendants made the following statement in their Answer 5:

'In April 1970, the average number of days required for processing applications in a Jackson County Office was as follows: O.A.A. 35.6; A.B. 37.5; A.D.C. 39.5; P.T.D. 40.5.'

"In Answer 13, Defendants further stated:

'If only one application had to be handled, it could undoubtedly be processed in the local office within three or four days or less unless medical examination was required. In Jackson County, however, almost one thousand applications are filed each month and this necessitates handling by various people and the various procedures set forth in Exhibit "A" attached. To the extent that cases require on an average of between four and thirty-five days, they may be said to be delayed by the caseload.'

"From these two quotes, it is clear that the Defendants are admitting that with the resources they presently possess they can reasonably determine all categorical assistance applications in a maximum of 40.5 days from the date that application is made if the applicant cooperates reasonably with them. Defendants however also admit in Answers 55 through 58, paragraphs 1 through 6, that it took much longer to decide the applications filed by Plaintiffs herein. An examination of Answers 55 through 58, paragraphs 1 through 6, which deal with the case histories of each of the Plaintiffs herein, will reveal no explanation in any one of them why it took the excessive length of time in each case which it did to determine eligibility. The conclusion is clear, Defendants have failed to determine Plaintiffs' applications for categorical assistance in a time period which they themselves admit is reasonable given the resources which they have at hand. It is just this kind of failure which Plaintiffs allege is arbitrary action in violation of the due process clause of the Fourteenth Amendment."

The answers to interrogatories 55 through 58, relied on by plaintiffs to establish the jurisdiction of this Court establish that all of the plaintiffs in this action have now been notified of their respective eligibilities for benefits and

have received initial payments on those eligibilities. The answer to interrogatory 55, with respect to each named plaintiff, recounts the history of each application and reads as follows:

"(1) Plaintiff Emma Craddock has received public assistance grants either as a dependent child or as a parent of dependent children since prior to 1952. She has never married. In December 1965 Miss Craddock and three of her children were removed from the Aid to Dependent Children rolls because they were sharing an apartment with a man. In August 17, 1966, her application for Aid to Dependent Children was rejected because her children were not living in her home. After two more children were born, she applied for Aid to Dependent Children On September 9, 1969. A caseworker visited Miss Craddock's home on September 18, 1969. She was then living in an apartment with her six minor children, each of whom had a different father. The caseworker to whom the case was assigned then became ill on September 29, 1969 and was hospitalized. Another caseworker was assigned to the case on October 8, 1969. After investigating school attendance and possibilities of support by the various fathers of Miss Craddock's children, the investigation was completed on October 23, 1969. However, since Miss Craddock had previously received benefits while she was being supported by a man between July and December 1965, a note in her file necessitated an administrative decision which was made November 4, 1969. Her application was approved November 5, and she received a check for the month of November, 1969."

"(2) Carolyn Hayes arrived in Missouri in early September 1969 and applied for Aid to Dependent Children benefits for herself and her four children on September 30, 1969. A caseworker visited her home on October 10, 1969. Mrs. Hayes did not have birth certificates for her three oldest children so transcripts of such certificates were obtained by the caseworker from the Vital Statistics Bureau of the State Division of Health, on October 22, 1969. A letter was written an Army post in an effort to locate and obtain support from the father of one of Mrs. Hayes' children and a reply was received on October 27, 1969. On November 3, 1969, caseworker talked with a male associate of Mrs. Hayes who was contributing $20.00 per week to her support. The caseworker to whom this case was assigned resigned effective November 11, 1969, and the case was completed by a Supervisor. Mrs. Hayes' application was approved November 25, 1969, and a check was mailed her for the month of December. In January 1970, Mrs. Hayes left the State of Missouri.

"(3) Plaintiff Marie Wells first applied for Aid to Dependent Children for herself and her two children in August 1954 and she was placed on the rolls on September 13, 1954. She continued to receive public assistance from that time until July 3, 1968 when it was established that her earnings and the earnings of her two oldest children aggregated more than was required to meet the needs of the family. During this period four additional children were born to Mrs. Wells. The father of ʌne contributes $8.00 per week under Court order. She applied again on February 26, 1969, and on May 1, 1969, and her applications on each occasion were rejected because of no need in the household. At the time of Mrs. Wells' application for Aid to Dependent Children on August 7, 1969, her oldest son James was residing in the home and was employed, and contributing to the family income, and it was established that he left the home on September 9, 1969, and his income was then no longer available to the family. Thereafter, office work was completed and the application was approved October 31, 1969, and a check was mailed to

Mrs. Wells for the month of November.

"(4) Plaintiff Judy Warren received Aid to Dependent Children benefits for her three children from October 1, 1967 until February 1, 1969, when she requested her case be closed because she intended to re-marry. She again applied for Aid to Dependent Children for her three children on September 10, 1969. (She advised a caseworker that she did not marry as planned). A caseworker visited her home on September 19. That two children were attending school was established by school records on October 20, 1969 and efforts to locate the deserting father of children were exhausted on October 15, 1969. The caseworker to whom this investigation was assigned became ill and was hospitalized from September 29, 1969 to October 14, 1969. The application was approved November 20, 1969 and a check was mailed to Mrs. Warren for the month of December.

"(5) Plaintiff Delois Hines first applied for Aid to Dependent Children benefits for herself and her two children on August 4, 1969 and her application was rejected because her earnings were such that she was not in need. Thereafter, on November 24, 1969, she reapplied after leaving her employment because of pregnancy. A caseworker visited the home on December 5, 1969 and after the caseworker became ill another caseworker visited the home on January 5 and January 7, 1970. School attendance of the two children was verified by school records on January 8, 1970. Miss Hines and her mother as co-tenants own two homes, in one of which Miss Hines resides and in the other her mother resides. Appraisals of this property * * * was completed on January 7, 1970 and the amount of the encumbrances on the mother's property was verified by letters from the mortgagees on January 12, 1970. The application was approved on January 15, 1970 and a check for the month of January was issued. She has been on the rolls since."

"(6) Plaintiff Betty Payne received Aid to Dependent Children benefits for four of her children prior to August 11, 1969 when she requested that her case be closed because she was leaving the State. She again applied for Aid to Dependent Children on October 15, 1969, for three of her children, two of the children being no longer in the home. A caseworker visited the home on October 22, 1969. School attendance of the three children was verified by school records on October 28 and 29, 1969. Correspondence as to the value of real estate owned by Mrs. Payne and mortgages thereon was completed on November 20, 1969. A conference between Plaintiff and her former husband and father of four of her children was held in the Prosecuting Attorney's office on November 24, 1969, and father agreed to pay $20.00 per week for support of children. Mrs. Payne became employed on November 17, 1969, and the amount of her earnings was verified from employer records on November 26, 1969. The caseworker to whom this investigation was assigned resigned her position on December 4, 1969 and the case was reassigned to another caseworker on December 19, 1969. The application was approved on January 15, 1970 and a check for the month of February 1970 was mailed to her."

The foregoing answers to interrogatories, the truth of which is relied on by plaintiffs as establishing the existence of federal jurisdiction, conclusively establish that this cause is moot. All plaintiffs named in this action have now received determinations of eligibility, have been notified thereof, and have received payments of benefits. The named plaintiffs in this action have now received all of the relief which they would have figured to receive in this action, according to their requests therefor. No irreparable injury currently threatens, or other extraordinary cir-

cumstances exist, to justify an award of injunctive or declaratory relief. It is noted that plaintiffs allude to "those amounts of public assistance benefits lost because of defendants' delay in acting on plaintiffs' application" and request "that this court order defendants to furnish an accounting of all benefits wrongfully denied because of past violations of the requirement of prompt action." But it appears that, under the law of Missouri, no past benefits can be lost simply because of a delay in acting on an application. The applicable statute, Section 208.070 RSMo, provides as follows:

> "Whenever the county office receives an application for benefits an investigation and record shall be promptly made of the circumstances of the applicant by the county office in order to ascertain the facts supporting the application. Upon the completion of such investigation the director of the division of welfare, or some one designated by him, shall decide whether the applicant is eligible for benefits and if entitled to benefits determine the amount thereof and the *date on which such benefits shall begin*. The director of county welfare shall notify the applicant of the decision." (Emphasis added.)

In turn, Section 208.060 RSMo, provides in part as follows:

> "The term benefits as used herein or in this law shall be construed to mean:
>
> (1) Pensions or old age assistance;
>
> (2) Aid to dependent children;
>
> (3) Aid or public relief to individuals in cases of public calamity;
>
> (4) Money or services available for child welfare services;
>
> (5) Any other grant, aid, pension or assistance administered by the division of welfare."

It therefore appears that, in view of the statutory power of the director of the division of welfare to determine the date that benefits should begin, there is no state statute, regulation or controlling decision which denies the director the power to award benefits retroactively. Therefore, the delay in notification issue is unrelated to any issue of possible loss of back payments. If any back payments are denied, the denial may be because of a decision of the director made independently of any delay in notification or payment. If plaintiffs should believe that such a decision denied to them due process of law or other constitutional protections, that is outside the scope of the pleadings in this case and should be tried under a separate claim, first in the state administrative and judicial system. This issue is one which has not been decided adversely to plaintiffs by the state courts. Until it is decided this Court should not undertake to assume that it will be so decided. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68; Department of Social Services of Iowa v. Dimery, 398 U.S. 322, 90 S.Ct. 1871, 26 L.Ed.2d 265; Chief Freight Lines Co. v. Missouri Highway Reciprocity Commission (W.D.Mo.) 311 F.Supp. 1128; Rodgers v. Danforth (W.D.Mo.) Civil Action No. 18360–2; Hardin v. Hill (W.D.Mo.) Civil Action No. 17991–2; Vogel v. Trans World Airlines (W.D.Mo.) Civil Action No. 17706–3.

■■ Further, this case has not yet been determined to be a class action and therefore plaintiffs cannot contend that they should be permitted to continue to prosecute this action as representatives of the class. See Callier v. Hill (W.D. Mo.) 326 F.Supp. 669. See also Watkins v. Chicago Housing Authority (C.A. 7) 406 F.2d 1234, holding that when the class representatives have received the relief which they have requested and the case is moot with respect to them, no case or controversy exists with respect to the possible class action. Those cases which hold that a controversy survives the voluntary grant of relief by defendant when the defendant's unlawful actions are likely to recur are distinguishable from the case at bar in that defendants in this cause will not likely again delay past the statutory time in making the

notifications which are pleaded in the complaint herein. See Callier v. Hill, *supra*; cf. United States v. Phosphate Export Association, 393 U.S. 199, 89 S. Ct. 361, 21 L.Ed.2d 344; United States v. W. T. Grant Co., 345 U.S. 629, 73 S. Ct. 894, 97 L.Ed. 1303; Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821; Walling v. Helmerich and Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; and United States v. Beach Associates (D.Md.) 286 F.Supp. 801. The determination of eligibility for the same welfare benefits is not something which is likely to recur frequently. Further, this case is unlike Jenkins v. United Gas Corp. (C.A. 5) 400 F.2d 28, and cannot be termed "perforce" a class action as that one was, because this case is not under the Equal Employment Opportunity Act which requires exhaustion of administrative remedies as a prerequisite to bringing suit (and which thus would operate to "slam shut" the courthouse door upon the mooting of any case with respect to a class representative). In the case of the class sought to be represented by the plaintiffs in this case, they may freely bring suit without exhausting administrative remedies under the Federal Civil Rights Act, Section 1983, Title 42, United States Code. And this case is further unlike those of Cypress v. Newport News General and Nonsectarian Hospital Association (C.A. 4) 375 F.2d 648 and Buckner v. County School Board of Greene County, Virginia (C.A. 4) 332 F.2d 452, wherein the cases were held not mooted by the admissions of plaintiffs charging racial discrimination to formerly white schools. In those cases, it was held that plaintiffs were also entitled to injunctions against continuing discrimination in the biracial school system. Neither racial discrimination nor any continuing denial of due process is involved in the case at bar.

For the foregoing reasons, this cause must be dismissed as moot. It is therefore

Adjudged that this cause be, and it is hereby, dismissed for the reasons stated above.