**UNITED STATES of America, Plaintiff-Appellant,**

v.

**William DeROSIER and Mildred DeRosier, d/b/a Northwood Bar, Defendants-Appellees.**

No. 72-1039.

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1973.

---

2. 5 USCA § 702:

Robert W. Rust, U. S. Atty., Miami, Fla., Peter Mear, Gerald W. Jones, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

J. Luther Drew, West Palm Beach, Fla., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The question involved on this appeal is whether an establishment, characterized as a "neighborhood bar", which derives a small portion of its total business from mechanical amusement devices which have moved in interstate commerce is a "place of entertainment" within the meaning of Title II of the Civil Rights Act of 1964, Title 42, U.S. C., Section 2000a et seq., and therefore subject to its provisions.

Defendants-appellees are the owners of The Northwood Bar, a neighborhood bar-tavern in West Palm Beach, Florida, open to the general public for the sale of beer and wine. Located therein for the use and enjoyment of patrons are a juke box, shuffle board and pool table, all manufactured outside the State of Florida. The devices are coin operated or activated, the revenue from them constituting 3% of appellee's business, dollarwise.

On April 29, 1971, the United States filed suit in the lower court against the

defendants-appellees, seeking to enjoin alleged racial discrimination in the operation of The Northwood Bar. The complaint alleged that The Northwood Bar was a "place of entertainment" within the provisions of the Civil Rights Act of 1964, supra, in that it provided entertainment which moved in interstate commerce and that defendants-appellees operated the bar in a fashion which discriminated against Negroes by refusing them service on the same basis as the service provided white members of the general public. The complaint prayed for appropriate injunctive relief.

After receiving a pre-trial stipulation of facts and conducting a pre-trial conference, the district judge, 332 F.Supp. 316, found there was no genuine issue as to any material fact and concluded that the mere presence of three coin-operated machines manufactured outside the state was not sufficient to regard the bar as a "place of entertainment" covered by the Act. Accordingly, he granted defendants-appellees' motion for summary judgment, Rule 56, F.R.Civ.P. The United States entered a timely appeal. We reverse.

Title II of the Civil Rights Act of 1964 is a sweeping prohibition of discrimination or segregation on the ground of race, color, religion, or national origin at places of public accommodation whose operations affect commerce. Sections 2000a(a) and (b)(3) provide:

"(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce. . . .

\* \* \* \* \* \*

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment . . ."

Section 2000a(c)(3) defines the term "affect commerce" as meaning that the operations of a Section 2000a(b)(3) establishment

". . . customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce . . ."

"Commerce" was defined as:

". . . travel, trade, traffic, commerce, transportation, or communication among the several States. . . ."

■ Although recognizing that the Act was not designed to cover all establishments, this Court *en banc* concluded that Sections 2000a(b)(3) and (c)(3) must be read "with open minds attuned to the clear and strong purpose of the Act, namely, to secure for all citizens the full enjoyment of facilities described in the Act which are open to the general public. That Title II of the Civil Rights Act is to be liberally construed and broadly read we find to be well established." Miller v. Amusement Enterprises, Inc., 5 Cir. 1968, 394 F.2d 342, 349. Thus we read the statute, particularly the term "place of entertainment", as did the Supreme Court in Daniel v. Paul, 1969, 395 U.S. 298, 307–308, 89 S. Ct. 1697, 1702, 23 L.Ed.2d 318, 326, according to its generally accepted meaning so as to give full effect to Congress' overriding purpose of eliminating the affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.

■ With this purpose as our lodestar, we compare the facts of the instant case with the "generally accepted meaning" of the Act and find that, at least facially, the presence of the out-of-state manufactured juke box, shuffle board and pool table for the use and enjoyment

of the bar's patrons would quite comfortably comport with a literal, but liberal, interpretation of the Act's language. Certainly an establishment which provides mechanical devices for the use and enjoyment of its patrons or customers is a "place of entertainment". Just as logically, these devices are, by use if not by definition, "sources of entertainment" which here were not only "customarily" presented, but permanently provided for the entertainment of the establishment's customers. Lastly, these devices have moved in "commerce" when they were manufactured in one state and used for their intended purpose in another.

■ As opposed to this literal reading of the statute, defendants-appellees suggest that the phrase "other place of exhibition or entertainment" in Section 2000a(b)(3) refers to facilities similar in kind to those enumerated in the statute: "theater, concert hall, . . . stadium", etc., which are devoted to exhibitions of skill or which are devoted entirely or substantially to the entertainment of the public. We cannot, however, read those limitations into the statute because the words of the statute do not require that we do so and the expressed intent of the statute prohibits us from doing so. The statute does not require that the entertainment be of a certain variety or that a certain quantum of the establishment's business be derived from the entertainment of its customers. On the contrary, the statute clearly specifies that ". . . *any* . . . place of entertainment" is a place of public accommodations within its meaning if that establishment's operations affect commerce. (Emphasis added).

Additionally, as the Supreme Court held in Daniel v. Paul, supra, at 308, 89 S.Ct. at 1702, 23 L.Ed.2d at 327, the legislative history of Section 2000a (c)(3) indicates that Congress specifically considered such mechanical and stationary machines such as a juke box, shuffle board and pool table, to be "sources of entertainment" within the meaning of Section 2000a(c)(3). Indeed, "The Senate rejected an amendment which would have ruled out most mechanical sources by requiring that the source of entertainment be one which has 'not come to rest within a State.' 110 Cong. Rec. 13915–13921 (1964)." *Id.* at n. 11.

■ Contrary to defendants-appellees intimation, the United States need not show that any person, because of race, color, religion, or national origin, had been deprived of any right to use those devices which caused the establishment to be characterized a "place of entertainment". Once it was shown, as here, that the establishment is a "place of entertainment", and thus a place of public accommodation, the Act proscribes any and all efforts to deny one "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation" of that place because of discrimination based on race, color, religion or national origin. The statute is not limited to proscribing discrimination only as to the enjoyment of those devices which make the establishment a place of public accommodation. Thus, as a matter of law, defendants-appellees Northwood Bar is a "place of public accommodation" within the Civil Rights Act of 1964 because of its being a "place of entertainment" within the Act.

■ In their answer to the complaint, defendants-appellees denied having discriminated against any person or persons because of race, color or creed. Since it is incumbent upon the United States to prove the contrary, the judgment of the district court granting summary judgment is reversed and the case is remanded to the district court with directions to afford the United States an opportunity to prove its allegations that defendants-appellees have violated the 1964 Civil Rights Act by discriminating against Negroes by refusing them service on the same basis as service is provided to members of the white race. If so, the United States is entitled to the injunctive relief sought.

Reversed and remanded.

JOHN R. BROWN, Chief Judge (concurring):

I concur fully in the result and the excellent opinion of Judge Simpson for the Court. I add again, only by way of emphasis, how sterile is the dismissal of a complaint for failure to state a claim based upon the pleadings. Now this case has to go back for an ascertainment of facts which are probably uncontradicted on the practices of this particular neighborhood bar. Having asserted with such vigor—and with all propriety under the law—that it was not covered since it did not have to afford its entertainment to persons without regard to race, it is highly unlikely that the establishment will now come in and attempt to prove that after all they had never violated the law at all even as we have held.

The facts could readily have been reduced to an uncontradicted form—in all likelihood—by affidavits and counter-affidavits, stipulations and the like for summary judgment. Then we could have decided the case once and for all on what the facts really are, not what the lawyers say they are.

The shortest way through is often the longest way around. This is another case to add to the growing list of this misspent judicial energy. See, Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505, 506; Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L. Ed.2d 652; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Barber v. M/V "Blue Cat," 5 Cir., 1967, 372 F.2d 626; Cruz v. Beto, 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 [1972]; Madison v. Purdy, 5 Cir., 1969, 410 F.2d 99, on appeal after remand, 1971, 440 F.2d 338; Campbell v. Beto, 5 Cir., 1972, 460 F.2d 765 [1972].

GODBOLD, Circuit Judge (dissenting):

I disagree with the conclusion that a neighborhood bar engaged in selling beer and wine, and deriving 3% of its revenues from three coin-operated devices described as juke box, shuffleboard (or "shuffle alley") and pool table is a "place of entertainment" as referred to in the Civil Rights Act, 42 U.S.C. § 2000(b)(3), and, therefore, a "place of public accommodation" as defined by § 201(b) of the same Act, 42 U.S.C. § 2000a(b).

I agree that the Act must be liberally construed and "with open minds attuned to the clear and strong purpose of the Act, namely, to secure for all citizens the full enjoyment of facilities described in the Act which are open to the general public." I concurred in the opinion of this court in Miller v. Amusement Enterprises, Inc., 394 F.2d 342 (5th Cir. 1968) (en banc), from which these principles were drawn. But neither high motives nor open minds authorize us to construe away the intent of Congress.

1.

The opinion of my brothers does not address itself to the core of the problem before us. Their analysis is in the form of considering whether an establishment treated by them as otherwise neutral insofar as coverage of the Act is concerned, is to lose its neutral status. That is not this case. This court is committed to the position that the coverage of the public accommodations section of the Act does not extend to bars per se. Fazzio Real Estate Co. v. Adams, 396 F.2d 146, 150 (5th Cir. 1968); Selden v. Topaz 1–2–3 Lounge, Inc., 447 F.2d 165 (5th Cir. 1971); [1] accord, Cuevas v. Sdrales, 344 F.2d 1019 (10th Cir.), cert. denied, 382 U.S. 1014, 86 S.

---

[1]. If there was any doubt of the position of this circuit after *Fazzio*, it was dispelled by *Selden*. Examination of the briefs in *Selden* discloses that one of appellants' two points on appeal was whether a bar or tavern *vel non*, serving only alcoholic beverages and no food, and offering no entertainment, was nevertheless a covered establishment. This court summarily rejected the argument, citing *Fazzio*. 447 F.2d at 165.

Ct. 625, 15 L.Ed.2d 528 (1966). In Tyson v. Cazes, 363 F.2d 742 (5th Cir. 1966), one of the grounds on which the District Court had dismissed plaintiff's complaint was that a bar was not a covered establishment, and on appeal we accepted without comment plaintiff's concession to the same effect.[1A]

Other courts have readily agreed that bars per se are not covered establishments. In Seidenberg v. McSorleys' Old Ale House, Inc., 308 F.Supp. 1253 (S.D., N.Y.1969), the court first held that the public accommodations section of the Act did not extend to sex discrimination, and then stated in dicta:

> [R]ecent decisions have found Section 201 of the Civil Rights Act of 1964 inapplicable to bars and taverns whose principal business is the sale of alcoholic beverages. [Citing *Tyson* and *Cuevas.*] However, a business which describes itself as a bar would nevertheless be covered by the Act if it is principally engaged in selling food for consumption on the premises. [Citing *Cuevas* and *Fazzio.*]

*Id.* at 1256. In United States v. Fraley, 282 F.Supp. 948 (M.D.N.C.1968), the court began with the hypothesis that a tavern with dance floor and live band that played twice weekly was not by itself a covered establishment, but nevertheless found that a covered lunch counter in the tavern conferred derivative coverage on the premises under § 2000a(b)(4). The court concluded:

> [S]ince it is not disputed that the defendant's non-covered bar is physically located within the same premises as his restaurant, and that the bar holds itself out as serving patrons of the restaurant, the entire establishment is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(4).

282 F.Supp. at 954.

In the instant case the District Judge quoted and applied our statement in *Fazzio* that "[i]t appears settled that bars, *per se*, are not covered by the Act." The government urges us, as it unsuccessfully urged the District Court, to abandon that position. My brothers have not abandoned it, and indeed they could not without a decision of the court *en banc.* Rather they have ignored its existence, not so much as tipping their hats in its direction.

It seems to me rational to conclude that the Congressional view of a bar—which is not to be covered by the Act—is a bar having the usual appurtenances, equipment and trappings of an establishment of that kind. That is, the Congressional concept of a bar is the every-

---

**1A.** Legislative history fully supports this circuit's position that bars per se are not covered establishments. See generally Cuevas v. Sdrales, 344 F.2d 1019 (10th Cir.), cert. denied, 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 528 (1966); Miller v. Amusement Enterprises, Inc., 391 F.2d 86, 89–96 (5th Cir. 1967), rev'd en banc, 394 F.2d 342 (1968). Senator Magnuson, floor manager of Title II in the Senate, directly addressed the status of bars under Title II. He prefaced his remarks with the following statement:

> "Mr. President . . . in order that the *Record* may be clear and the intent of Congress better ascertained by the courts in the future, I should briefly describe each section of Title II. Following that, I should like to dwell on the interpretation of those sections."

110 Cong.Rec. 7404. The Senator then continued:

> "A few weeks ago the Senator from Louisiana . . . stated that he was not clear as to when bars or nightclubs would be subject to the provisions of Title II. As a general rule, establishments of this kind will not come within the scope of the title. But a bar or nightclub physically located in a covered hotel will be covered, if it is open to patrons of the hotel. A nightclub might also be covered under section 201(b) (3) if it customarily offers entertainment which moves in interstate commerce. A business which describes itself as a bar or nightclub would also be covered if it is 'principally engaged in selling food for consumption on the premises.' And, of course, a bar or nightclub would be covered under section 202 in the rare case in which State law required it to segregate or discriminate."

*Id.* at 7407.

day, man on the street concept. The District Judge took that approach, and, recognizing the noncoverage of bars, dismissed the case, saying:

> Only by ignoring the plain working [sic] of the Act and Congressional intent could this Court include a neighborhood bar, intended to be excluded, as a "place of exhibition or entertainment" because that bar maintains three coin-operated machines manufactured outside the state. To hold otherwise would, without a doubt, bring every bar within the Act and fly in the face of the plain wording, meaning, and intent of the statute.

At the pleading stage of this lawsuit, without evidence of what normally constitutes a bar, without an evidentiary hearing, without even the statistics which we delight in saying tell us so much, my colleagues conclude as a matter of law that the bar which Congress intended not to be covered is a bar only so long as it is sans "mechanical devices for the use and entertainment of [its] patrons and customers." As my colleagues would have it, as a matter of law, a bar in which one may engage in such pleasant diversions as drinking beer or wine, bantering lightly or commiserating lachrymosely with friends and bartender, and even lifting voice in song, is only a bar. But put a nickel in the nickelodeon or the pin ball machine, and the bar becomes something else.[2] I agree with District Judge Fulton's approach that small coin-operated devices such as those here involved are concomitant parts of a bar. My two colleagues appear to feel otherwise. The fact that two judges, on the basis of their own knowledge and experience, take judicial notice leading them to one conclusion, while two others, on the same basis, reach the opposite conclusion, seems to me to command as a minimum the taking of evidence on the point. I claim no more expertise about bars than my colleagues, but I do not admit any less. It seems to me simply inappropriate to hold as a matter of law, at the appellate level, that coin-operated devices which are located in a bar and at least arguably are usual equipment or appurtenances of a bar, are not that at all.

2.

The heart of the majority opinion is a two-part analysis which appears to run this way—the devices here involved are "sources of entertainment" as that term is employed in § 2000a(c)(3) and in common parlance ("generally accepted meaning") as well; according the statute "generally accepted meaning," as referred to by the Supreme Court in Daniel v. Paul, 395 U.S. 298, 307–308, 89 S. Ct. 1697, 23 L.Ed.2d 318, 326 (1969), the term "place of entertainment" includes a bar equipped with "sources of entertainment." I am unsure whether the majority consider the presence of any § 2000a(c)(3) device to be conclusively determinative of § 2000a(b)(3) character or merely circumstantial evidence. But regardless of which is meant, the opinion's interplay of the two concepts—"generally accepted meaning" and the statutory language of § 2000a(b)(3) and § 2000a(c)(3)—is not valid. Neither prong of the concept is properly applicable.

I agree with the majority that under generally accepted meaning, a bar *is* a "place of entertainment." Were there no legislative history and no body of case law to the contrary, I would so conclude. But the now-established meaning, for purposes of this case, is a Congressionally-limited term, "any place of entertainment except a bar." In Daniel v. Paul the argument was made that a recreational area, which under generally accepted meaning was a "place of entertainment," was not a § 2000a(b)(3) "place of entertainment" because those entertained were participants in sports

---

2. And, as we point out below, under the majority approach watching the football game on television, catching the baseball scores on the radio, or buying a pack of smokes out of a vending machine may be enough to effect the same transformation.

and activities rather than spectators, and the focus of Congressional discussion on Title II of the Act had been on spectator entertainment. Rather than give effect to the primary object of Congress' concern, the Supreme Court relied on the broader coverage required by the natural language of the Act and the overriding purpose of Title II and gave to "place of entertainment" its generally accepted meaning which, the Court found, included recreational areas where entertainment was participatory. 395 U.S. at 305–308, 89 S.Ct. 1697, 23 L.Ed. 2d at 325–327. In the instant case it already has been judicially established in this circuit and elsewhere that the relevant Congressional intention is narrower than the common parlance. See part 1, *supra.* Generally accepted meaning is not available as a tool to broaden the scope of a term which Congress advisedly limited to a narrower range. No discussion of Miller v. Amusement Enterprises, Inc., *supra,* is necessary other than to point out that it is a case precisely like Daniel v. Paul.

Turning to the relationship of § 2000a(b)(3) and § 2000a(c)(3), in Daniel v. Paul the Supreme Court indicated that mechanical devices, such as juke boxes, are "sources of entertainment" within the meaning of § 2000a(c)(3). The temptation is great to assume that (c)(3) gives content to (b)(3), since they are in the same statute and contain the common word "entertainment." But, as already pointed out, (b)(3) is a phrase of limited meaning, and the broader (c)(3) usage cannot expand (b)(3) beyond Congressionally-imposed limits.

There are other reasons as well why § 2000a(c)(3) should not be equated either conclusively or circumstantially with the term "place of entertainment" in § 2000a(b)(3). First, the statute requires a court to determine initially whether the subject premises are a "place of entertainment" under § 2000a(b)(3). After making that deter-

mination, a court should then consider whether the premises meet the commerce connection requirements of § 2000a(c)(3). The presence of a § 2000a(c)(3) "source of entertainment" is important in establishing commerce connection. This two-step statutory structure requires a court to consider § 2000a(b)(3) requirements separately from § 2000a(c)(3) requirements. As the Supreme Court stated in Daniel v. Paul, the issues are whether the subject establishment is " 'place of public accommodation' as defined by § 2000a(b) of the 1964 Act, *and, if so,* whether its operations 'affect commerce' within the meaning of § 2000a(c) of that Act." 395 U.S. at 302, 89 S.Ct. at 1699, 23 L. Ed.2d at 323 (emphasis added). Using the § 2000a(c)(3) term "source of entertainment" to give meaning to § 2000a(b)(3) short circuits the analytical methodology compelled by the statute. Secondly, in enacting the public accommodations section of the 1964 Act Congress did not intend to regulate all establishments that it had power to regulate. Broad coverage of retail establishments was originally contemplated, H.R. 7152, but that coverage was deleted when the House Judiciary Committee reported the bill. H.R. No. 914 on H.R. 7152, 88th Congress, 1st Sess., Part I. at 2–3. Congress intended to limit coverage to "those business establishments which on the basis of current experience have proved to be the most important sources of discrimination and, therefore, the focal point of most discriminations." House Judiciary Comm. Hearings on H. R. 7152, Part IV, a 2655–56 (statement of Attorney General Kennedy). Obviously, then, an establishment which may meet the commerce connection requirement of § 2000a(c)(3) might nevertheless fail to qualify as a "place of entertainment" under § 2000a(b)(3). The two-step analysis compelled by the statute was not happen-stance. To equate the criteria separately specified in §§ 2000a(c)(3) and 2000a(b)(3) operates to extend coverage in plain con-

travention of the statute's intended scope.[3]

Section 2000a(b)(4) sets out the common method for extending coverage to otherwise noncovered establishments. This section provides that a public accommodation is "any establishment . . . within the premises of which is physically located any such covered establishment, and . . . which holds itself out as serving patrons of such establishment." Thus, a noncovered bar would become covered under this section if the coin machines separately constituted a "place of entertainment."[4] The majority do not suggest, however, that the instant devices, separately or collectively, comprise a "place of entertainment."

**4.**

Even if, in determining whether an establishment is covered or noncovered, one can appropriately employ a test consisting of the presence of mechanical amusement devices (see part 2, *supra*), such a test has no application unless and until it has been determined that the devices are *not* part of the normal trappings of a noncovered establishment. But, assuming that such a test is to be used, and that the particular devices are found to be not part of the normal equipment of a bar, the mechanistic application of a "presence of a device" rule is unrealistic. In the light of the Congressional history, some kind of *de minimis* principle must be applied. Or, to put it another way, it is not rational to

3. Remarks made during floor debates over Title II underline its intended coverage:

"The business enterprises covered by section 201 include hotels and motels—other than small, owner-occupied establishments—restaurants and lunch counters, including those on the premises of retail establishments, gasoline stations, and motion-picture houses, theaters, sports arenas, and other public places of exhibition or amusement. These are the establishments covered by title II. The reach of that title is much narrower than when the bill was first introduced. It is also narrower than S. 1732, the bill reported by the Senate Commerce Committee, which covers the general run of retail establishments, membership in labor unions, and so forth. . . . The deletion of the coverage of retail establishments generally is illustrative of the moderate nature of this bill and of its intent to deal only with the problems which urgently require solution. Discrimination in retail establishments generally is not as troublesome a problem as is discrimination in the places of public accommodation enumerated in the bill. And it seems likely that if discrimination is terminated in restaurants and hotels, it will soon be terminated voluntarily in those few retail stores where it still exists."

110 Cong.Rec. 6533 (remarks of Senator Humphrey).

"Title II of H.R. 7152 would establish the right of all persons, without regard to race, color, religion, or na-

tional origin, to the full and equal enjoyment of the services and facilities of a variety of places of business serving the general public. The list of businesses expressly covered by the title consists of places of public accommodation in which racial discrimination is particularly humiliating and causes the greatest inconvenience. Moreover, the list focuses on situations in which congressional action can clearly produce prompt and significant relief."

110 Cong.Rec. 7383 (remarks of Senator Young).

4. Compare Daniel v. Paul, *supra*, (covered snack bar confers derivative coverage on recreational area); Fazzio Real Estate Co. v. Adams, *supra* (covered refreshment stand confers derivative coverage on bowling alley); United States v. Johnson Lake Inc., 312 F.Supp. 1376 (S.D. Ala.1970) (snack bar confers derivative coverage on recreational area); United States v. Medical Society, 298 F.Supp. 145 (D.S.C.1969) (snack bar confers derivative coverage on hospital); United States v. Beach Associates, 286 F. Supp. 801 (D.Md.1968) (food facility confers derivative coverage on beach recreational area); United States v. All Star Triangle Bowl, Inc., 283 F.Supp. 300 (D.S.C.1968) (lunch counter confers derivative coverage on bowling alley); United States v. Fraley, 282 F.Supp. 948 (M.D.N.C.1968) (lunch counter confers derivative coverage on tavern); Evans v. Laurel Links, Inc., 261 F.Supp. 474 (E.D.Va.1966) (lunch counter confers derivative coverage on golf course).

conclude that Congress intended that every departure, however nominal, from the usual mode of operation of an otherwise noncovered establishment will cause it to become covered notwithstanding that its essential character has not altered. I need no evidentiary hearing to know that a goodly percentage of the bars in America are equipped with television set or radio, or both. Both are "mechanical devices for the use and enjoyment of [its] patrons and customers." I await the judicial declaration that when Congress set out a scope of coverage which did not include bars it intended noncovered status for only those radio-less, TV-less, and jukebox-less emporiums where glum and disconsolate, the drinkers of the evening may listen to no Nashville Sound records, follow neither Archie Bunker nor Joe Namath and the Jets, nor even listen to the weather report. And, presumably, lest the bar become a place of entertainment, those drinkers addicted to nicotine must purchase their cigarettes over the counter and not from a vending machine mechanically purveying this particular form of "use and enjoyment for patrons and customers." Or, perhaps, if that day of decision comes this court, or some other, will decide that there is a legally cognizable difference between a bar with a television set and a bar with a juke box. It seems to me better to recognize that a bar is a bar so long as it has the things that generally go with a bar, and if judges cannot agree on what those things are, then to determine that issue in the usual judicial manner. If, however, the courts are to conclude that the presence of coin devices can cause a bar to lose is noncovered status, the departure in this instance is too insignificant.

### 5.

To summarize my views:

(a) It is essential to recognize that we are not determining the status of an otherwise neutral establishment but of an otherwise noncovered establishment.

(b) I agree with District Judge Fulton that small coin-operated amusement devices are concomitant appurtenances of bars, and that to hold otherwise is to ignore the intent of Congress that bars not be covered.

(c) If there is disagreement among judges as to whether coin-operated devices are concomitant appurtenances of bars, evidence should be taken on the point. Conflicting judicial notice is neither appropriate nor seemly.

(d) The employment of the § 2000a(c)(3) phrase "source of entertainment" to determine whether an otherwise noncovered establishment is to become a covered "place of entertainment" under § 2000a(b)(3) is erroneous.

(e) The concept of generally accepted meaning may not be employed to override what has been judicially established as the intent of Congress, by expanding the scope of a Congressionally-limited meaning.

(f) If the particular devices are not part of the normal appurtenances of a bar, and if we are to measure departure from the norm by the presence of mechanical amusement devices, the departure in this instance is too nominal to impose coverage.

Immediately following the language in *Miller* upon which my brothers rely the following appears:

Though we give to the Act a liberal interpretation, we are aware that the Act was not designed to cover all establishments. "Congress * * * exclude[d] some establishments from the Act either for reasons of policy or because it believed its powers to regulate and protect interstate commerce did not extend so far." Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 273, 85 S.Ct. 348, 366, 13 L. Ed.2d 258, 277 (1964).

394 F.2d at 349–350. I am in accord with the District Judge in the present case, who in his dismissal order said, "[r]egardless of what this Court may think of the wisdom of exemptions [exclusions] to the Act, it cannot substitute its judgment for that of Congress."