UNITED STATES of America, Plaintiff,

v.

**Jeremy BAIRD, et al., Defendants.**

**No. CR. S–94–162–WBS.**

United States District Court,
E.D. California.

Aug. 31, 1994.

Dwight M. Samuel, Law Offices of Dwight M. Samuel, Sacramento, CA, for Jeremy R. Baird.

Quin Denvir, Law Offices of Quin Denvir, Sacramento, CA, for Gary J. Flores.

Robert Miller Holley, Law Offices of Robert M. Holley, Sacramento, CA, for Jason R. Jordan.

Michael J. Kennedy, Federal Defender, Sacramento, CA, for Aaron J. Phillips.

Steven D. Bauer, Law Offices of Steven D. Bauer, Sacramento, CA, for Timothy L. Reasons.

## *MEMORANDUM AND ORDER*

SHUBB, District Judge.

Defendants have moved to dismiss counts one and two of the superseding indictment pursuant to Fed.R.Crim.P. 12.

### *Background*

In count one of the superseding indictment the five named defendants are charged with a conspiracy against federal civil rights in violation of 18 U.S.C. § 241. It charges that the defendants conspired to injure, oppress, threaten, and intimidate inhabitants of the State of California "in the free exercise and enjoyment of a right and privilege secured to them by the United States Constitution and laws of the United States, that is, the right to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, that is the 7–11 convenience store at the intersection of Antelope Road and Zenith Drive, Citrus Heights, California,

without discrimination or segregation on the ground of race, color or national origin."

In count two, each of those same defendants is charged with interference with a federally protected activity in violation of 18 U.S.C. § 245(b)(2)(F). It charges that the defendants by force and threat of force wilfully caused bodily injury, intimidated and interfered with, attempted to injure, intimidate and interfere with, and aided and abetted in the injury, intimidation and interference with a black male "because of his race, color or national origin and because he was enjoying the goods, services and facilities of a place of entertainment that serves the public, specifically: the 7–11 convenience store at the intersection of Antelope Road and Zenith Drive, Citrus Heights, California."

Both sides agree that an essential element of both of the contested counts of the superseding indictment is the fact that the 7–Eleven store described therein was a public accommodation under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.[1] Both sides have also stipulated that the question of whether that store was a public accommodation within the meaning of section 2000a is one for the court, and not the jury, to decide. *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986). It has been further stipulated that the government has the burden of establishing that the store was a public accommo-

dation beyond a reasonable doubt. The parties have submitted declarations in support of their respective positions, and the relevant facts are not in dispute.

### Issue

The issue before the court, therefore, is whether a 7–Eleven convenience store is a place of public accommodation within the meaning of section 2000a. For the reasons discussed below, the court concludes that it is not.

### Discussion

Title II of the Civil Rights Act of 1964 was not intended to cover every type of business establishment:

The passage of the Act followed extensive hearings. A study of the hearings before the different committees and the debates in Congress illustrates, we think, that Congress did not intend to include all establishments to which its constitutional powers might extend. The legislation was aimed at the aggravated sources of discrimination which affected interstate commerce. Many business establishments were not included within the scope of the Act. It was thought that if the most flagrant and troublesome areas of discrimination were eliminated by law, the less bothersome would disappear through voluntary

---

1. 2. Section 2000a provides, in relevant part:
   **Equal access**
   (a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.
   **Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments.**
   (b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this title [42 U.S.C. §§ 2000a–2000a–6] if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
   (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
   (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
   (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
   (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

action and public effort." (*Cuevas v. Sdrales,* 344 F.2d 1019, 1021 (10th Cir.1965)). As the *Cuevas* court pointed out, Senator Humphrey, a prime supporter of the bill, made clear that its coverage had intentionally been limited:

The deletion of the coverage of retail establishments generally is illustrative of the moderate nature of this bill and of its intent to deal only with the problems which urgently require solution. Discrimination in retail establishments generally is not as troublesome a problem as is discrimination in the places of public accommodation enumerated in the bill. And it seems likely that if discrimination is terminated in restaurants and hotels, it will soon be terminated voluntarily in those, few retail stores where it still exists." (*Ibid.,* quoting Congressional Record, 88th Congress, 2d Session, Vol. 110, No. 58, March 30, 1964.)

Thus, section 2000a(b) is very explicit in limiting the types of establishments that may qualify as a place of public accommodation under the statute. The government argues that the 7–Eleven convenience store in question qualifies as both a "facility principally engaged in selling food for consumption on the premises" under subsection (b)(2) and a "place of exhibition or entertainment" under subsection (b)(3). For the reasons discussed below, the court finds that it is neither.

### a. Facility principally engaged in selling food for consumption on the premises

■ The government relies upon the Declaration of Special Agent Dale L. Miskell, who states that on numerous visits to the store in question he observed various foods, beverages and candies, including "cold and hot sandwiches to go", for sale and that several patrons purchased and consumed various ready to eat or drink food and snack items on the premises. In fact, Agent Miskell states that he personally purchased and consumed ready to eat food on the premises. (Miskell Decl., paras. 4 and 5.)

Defendants have submitted the Declaration of Arthur E. Rubinett, Assistant Secretary and Senior Counsel for The Southland Corporation, the operator and franchisor of 7–Eleven convenience stores. He states that 7–Eleven stores are extended-hour retail stores which provide groceries, take-out foods and beverages, dairy products, non-food merchandise, specialty items, and various services, with an emphasis on convenience to the customer. (Rubinett Decl., para. 2.) He states further that 7–Eleven stores are not intended to be facilities principally engaged in selling food for consumption on the premises. (Rubinett Decl., paras. 3 and 4.) The stores have no indoor or outdoor seating areas where food can be consumed in or near the stores, and the food sold by 7–Eleven stores is intended to be consumed away from the premises. (Rubinett Decl., para. 3.)

The owner of the 7–Eleven store in question, Albert Woo, states in his Declaration that during his ownership over the last two years, the store has not offered any food for consumption on the premises and has had no facilities for consumption of food on the premises. (Woo Decl., para. 2.) In fact, if a 7–Eleven franchisee were to convert his store to a facility principally engaged in selling food for consumption on the premises, he would be in violation of the franchise agreement and that agreement could be terminated. (Rubinett Decl., para. 5.)

The Declaration of defendants' investigator, Robert J. Faraoni, confirms that the 7–Eleven store in question offers an extremely wide variety of merchandise, including paper goods, laundry and cleaning supplies, automotive supplies, hardware items, medicines and medical items, toiletries, tobacco products, and many other items in addition to grocery and other food products. (Faraoni Decl., para. 2a–yy.) He did not observe any tables, chairs, booths, stools, sit-down counters, or other facilities for consumption of food on the premises, either inside or outside the store. To the contrary, a sign was posted on the front of the store stating "no loitering" and "no drinking on premises." (Faraoni Decl., paras. 3 and 4.)

Although a number of restaurant-like facilities have been held to come under section 2000a(b)(2), to the court's knowledge no retail convenience store or any business resembling one has been found to be covered by

the statute. (See *Anno.*, 10 A.L.R. Fed. 220.) The closest application appears to be *Newman v. Piggie Park Enterprises, Inc.*, 377 F.2d 433 (4th Cir.1967), cited by the government. In that case, Piggie Park owned five drive-in restaurants, specializing in southern style barbecue. The customer would drive in and place his or her order by intercom, and a curb attendant would deliver the food or beverage to the customer's car and collect for it. The orders were served in disposable paper plates and cups and were served in such a way that they were ready for consumption. Half the drive-in's customers ate their food in their automobiles while parked on the premises. Any tables, chairs, counters, bar or stools at the drive-ins were not "sufficient to accommodate any appreciable number of patrons." The Fourth Circuit held that, even though half the prepared food was consumed off the premises, the drive-ins—which sold nothing but prepared food and drinks—came under 42 U.S.C. § 2000a(b)(2).

Looking to the legislative history, the *Newman* court concluded that the "emphasis in the phrase 'principally engaged in selling *food* for consumption on the premises' is properly on the word 'food'" (*Id.*, at 435), and that the addition of the word "principally" to subsection (b)(2) was not intended to have any bearing upon the percentage of food consumed on the premises, but rather to exclude from coverage places where food service was only incidental to some other business. (*Id.*, at 436). The court reaffirmed, however, that Congress clearly did not intend to cover "grocery type food stores." *Ibid.* The court explained:

> Retail stores, food markets, and the like were excluded from the Act for the policy reason that there was little, if any, discrimination in the operation of them. (*Id.*, at 436.)

On the other hand, the court observed:

> We think the Congress plainly meant to include within the coverage of the Act all restaurants, cafeterias, lunchrooms, lunch counters, soda fountains, and *all other facilities* [emphasis in the original] similarly engaged *as a main part of their business* [emphasis added] in selling food ready for consumption on the premises.

There is no dispute that food items are sold at the 7–Eleven retail convenience store in this case. But the fact that some of the patrons, including Agent Miskell, may have consumed such items on the premises does not establish that the store is engaged *as a main part of its business* in selling food ready for consumption on the premises. Like almost every grocery store, it offers food which could be consumed on the premises. The undisputed evidence, however, is that the consumption of food on the premises is neither intended nor encouraged, and that the selling of food ready for consumption on the premises is *not* a main part of the store's business.

**b. Place of exhibition or entertainment**

The government bases its contention that the 7–Eleven convenience store in this case is a "place of exhibition or entertainment" on the facts that (a) for a period of less than 16 months the store had two leased video machines on its premises,[2] and (b) the convenience store sells California lottery tickets. The court cannot find that either of those facts, considered singularly or together, qualify the store as a place of exhibition or entertainment under section 2000a(b)(3).

In *Daniel v. Paul*, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969), the Supreme Court held that "the statutory language 'place of entertainment' should be given full effect *according to its generally accepted meaning*." (395 U.S. at 308, 89 S.Ct. at 1702; emphasis added.) Accordingly, the *Daniel* court ruled that section 2000a(b)(3) was applicable to recreational areas, in addition to places where people were entertained by others. Since then, the cases finding a facility to be a place of exhibition or entertainment under the statute have uniformly involved facilities which in some realistic sense fit the "generally accepted meaning" of a place of entertainment. For example:

1. A recreation area with swimming, boating, picnicking, sunbathing, dancing, and miniature golf facilities. (*Daniel*);

---

**2.** 1. The video machines were installed sometime in 1993 and removed on April 25, 1994 because they were not profitable. The average gross receipts from the video machines for 1994 was less than $150 per month. (Declaration of Bart Finley.)

2. An amusement park. (*Miller v. Amusement Enterprises, Inc.*, 394 F.2d 342 (5th Cir.1968));

3. A roller skating rink. (*Evans v. Seaman*, 452 F.2d 749 (5th Cir.1972));

4. A golf course and pro shop. (*United States v. Central Carolina Bank and Trust Co.*, 431 F.2d 972 (4th Cir.1970));

5. A pool room with eight tables and seating accommodations for 23 people, (*United States v. Williams*, 376 F.Supp. 750 (M.D.Fla.1974));

6. A health and exercise club. (*Rousseve v. Shape Spa for Health and Beauty, Inc.*, 516 F.2d 64 (5th Cir.1975) (2–1 decision));

7. A swimming club with snack bar. (*United States v. Lansdowne Swim Club*, 894 F.2d 83 (3rd Cir.1990)).

No case to the court's knowledge has held that the presence of video games or lottery machine converts an establishment into a place of exhibition or entertainment. The case most favorable to the government's position appears to be *United States v. DeRosier*, 473 F.2d 749 (5th Cir.1973). Over a vigorous dissent, the Fifth Circuit held that a neighborhood bar-tavern which offered its customers a coin operated or activated pool table, shuffle board, and a juke box in addition to alcohol was a place of entertainment.

*DeRosier* does not appear to have been followed outside of the Fifth Circuit. *See United States v. Deyorio*, 473 F.2d 1041, 1042 (5th Cir.1973) (holding that a bar with mechanical amusement devices was a place of entertainment within the meaning of section 2000a(b)(2)). The court is unaware of any case in this Circuit in which a bar or tavern, with or without mechanical amusement devices, has been found to be a place of entertainment. Moreover, the present case is distinguishable from *DeRosier*. When an establishment is already a place where people are invited to congregate and mingle for social purposes, such as a bar and tavern, the addition of music and games may enhance the fundamental nature of the establishment as a place of entertainment. However, the inclusion of two video games in a retail convenience store does not change the basic function and purpose of that store, which is to sell the wide array of merchandise and services offered there, into a place of entertainment.

Mr. Rubinett asserts that 7–Eleven stores are not intended to be places of exhibition or entertainment, but rather are retail establishments designed to sell various goods in a convenient and speedy transaction. (Rubinett Decl., para. 4.) If the court were to accept the government's argument that the presence of video machines transformed the store into a place of entertainment, the court would be compelled to find that the store was not covered under Title II before the machines were installed, became covered as a place of entertainment when the machines were installed in 1993, then became excluded from coverage again when the machines were removed in April of 1994. Such a result would be arbitrary and not in keeping with the intent of Title II of the Civil Rights Act of 1964.

■ Likewise, the presence of lottery machines does not convert a convenience store into a place of entertainment. A lottery machine can hardly be considered entertainment. Lottery machines are simply a way to purchase a commodity—lottery tickets. Defendants have submitted the Declaration of Al Frazier, Director of the Sales Division for the California Lottery, setting forth the types of establishments that sell lottery tickets. They include such diverse businesses as laundromats, news stands, bakeries, hardware and tobacco stores, drug stores, grocery stores, sporting goods and auto supply stores, check cashing services, and brake shops. (Frazier Decl., Exhibit A.) It is clear that the sale of lottery tickets is a peripheral adjunct to the various businesses that sell them. It would grossly distort the statutory language to hold that the mere fact of lottery sales rendered a business a "place of exhibition or entertainment."

The nature of the type of establishment intended to be covered by the phrase "place of exhibition or entertainment" is demonstrated by the examples set forth in the statute, *i.e.*, "motion picture house, theater, concert hall, sports arena, stadium" (42 U.S.C. § 2000a(b)(3)), and by the facilities judicially held to come within the statutory definition. Based upon the evidence present-

ed, the court cannot conclude that 7–Eleven convenience stores in general, or this store in particular, come within the generally accepted meaning of that phrase.

### Conclusion

The alleged conduct of the defendants, if proved, is egregious. Such conduct, however, would constitute a violation of state law, which state prosecutors and the state courts are well equipped to handle. The court finds only that an essential element of the two contested counts of this federal indictment is lacking. Because the court finds the government has failed to prove beyond a reasonable doubt that the 7–Eleven convenience store described in counts one and two of the Superseding Indictment was a public accommodation within the meaning of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, defendants' motion to dismiss those counts is hereby GRANTED.