[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14125

_____

D.C. Docket No. 2:17-cv-00566-MHT-SMD


CORAL RIDGE MINISTRIES MEDIA, INC.,
d.b.a.
D. James Kennedy Ministries,

                                                    Plaintiff - Appellant,


versus


AMAZON.COM, INC.,
SOUTHERN POVERTY LAW CENTER,
INC.,
AMAZONSMILE FOUNDATION,

                                         Defendants - Appellees,


AMAZONSMILE FOUNDATION, INC.,
et al.,

                                         Defendants.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 28, 2021)

Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

WILSON, Circuit Judge:

Coral Ridge Ministries Media (Coral Ridge), a Christian ministry and media corporation, appeals the district court's dismissal of its defamation claim against the Southern Poverty Law Center (SPLC) and religious discrimination claim against Amazon.com and the AmazonSmile Foundation (collectively, Amazon). Because we find that the district court did not err in dismissing this suit, we affirm.

**I.**

Amazon.com is the largest internet-based retailer in the world. AmazonSmile Foundation (AmazonSmile) is a tax-exempt corporation affiliated with Amazon.com. The AmazonSmile website allows customers to buy products as if they were using Amazon.com, but with every purchase Amazon will donate 0.5% of the price to an eligible charity selected by the customer. To be an eligible charity for the AmazonSmile program, an organization must be registered and in good standing with the Internal Revenue Service as a nonprofit organization under 26 U.S.C. § 501(c)(3); must agree to a Participation Agreement; and cannot "engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other illegal activities." In relation to the last requirement, organizations that SPLC designates as hate groups are not eligible to participate in the AmazonSmile program. SPLC is an Alabama-based nonprofit organization

2

that, among other things, publishes a "Hate Map"—a list of entities the organization has characterized as hate groups—on its website.[1] Coral Ridge applied to be an eligible charity for the AmazonSmile program, but Amazon denied its application because Coral Ridge is listed on the Hate Map as being anti-LGBTQ.[2]

Coral Ridge filed suit in the Middle District of Alabama, claiming, inter alia, that (1) SPLC defamed Coral Ridge by listing it on the Hate Map, and (2) Amazon violated Title II of the Civil Rights Act (Title II), 42 U.S.C. § 2000a et seq., by discriminating against it based on religion.[3] In its complaint, Coral Ridge acknowledged that it opposes homosexual conduct, but denied that it is a hate group. It rejected SPLC's definition of hate group and instead said that the commonly understood definition of the term was "groups that engage in violence and crime."[4] Coral Ridge asserted it did not fall within either this definition or SPLC's definition of the term. Additionally, Coral Ridge alleged that SPLC listed

---

[1] According to Coral Ridge's complaint, SPLC defines "hate groups" as organizations that have "beliefs or practices that attack or malign an entire class of people, typically for their immutable characteristics."

[2] LGBTQ is an acronym referring to lesbian, gay, bisexual, transgender, and queer people.

[3] Coral Ridge also brought claims against SPLC under the Lanham Act, 15 U.S.C. § 1125. The district court dismissed these claims and Coral Ridge does not appeal that dismissal. Additionally, Coral Ridge brought a negligence claim against Amazon. It concedes that this claim hinges on its Title II claim. Because we affirm the district court's dismissal of Coral Ridge's Title II claim, we do not address this negligence claim on appeal.

[4] On appeal, Coral Ridge puts forward a different definition that combines the definitions for "hate" and "group." Therefore, according to Coral Ridge a hate group is commonly understood as "a 'group' that 'hates.'"

it on the Hate Map because of its religious beliefs about LGBTQ conduct.

Therefore, according to Coral Ridge, a court could infer that Amazon

discriminated against it by relying on the Hate Map.  Both SPLC and Amazon

moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6).

In a thorough 141-page order, the district court dismissed the defamation

claim on First Amendment grounds and dismissed the Title II claim primarily

because it found that the AmazonSmile program was not covered by Title II in this

instance.  Alternatively, it held that Coral Ridge's interpretation of Title II created

First Amendment problems.  Finally, the district court found that Coral Ridge did

not plausibly allege either intentional or disparate impact discrimination.  It

therefore dismissed Coral Ridge's suit in full.

## II.

We review de novo a Rule 12(b)(6) dismissal for failure to state a claim

upon which relief may be granted.  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686,

694 (11th Cir. 2016).  We accept the factual allegations in the complaint as true

and construe them in the light most favorable to the plaintiff.  *Id.*  To survive a

motion to dismiss, a complaint must contain "enough facts to state a claim to relief

that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We need not, however, accept as true a complaint's conclusory allegations or legal conclusions. *Id.*

### III.

Under Alabama law, a plaintiff establishes a prima facie defamation claim when he or she demonstrates: "(1) that the defendant was at least negligent (2) in publishing (3) a false and defamatory statement to another (4) concerning the plaintiff, (5) which is either actionable without having to prove special harm . . . or actionable upon allegations and proof of special harm." *Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (alterations accepted and emphasis omitted).

When applying state defamation law to public figures, the First Amendment imposes additional limitations.[5] First, the alleged defamatory statement must be "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990). Second, the statement must be actually false. *Id.* at 16. And third, a public-figure plaintiff must prove that the defendant made the alleged defamatory statement with "actual malice"—"with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). This actual malice test is subjective; the public-figure plaintiff must show that the defendant "*in fact* entertained serious

---

[5] Coral Ridge concedes that it is a public figure for the purposes of this case.

doubts as to the truth" of the statement. *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020).

The district court dismissed Coral Ridge's defamation claim on the grounds that the term hate group has a "highly debatable and ambiguous meaning" and thus is not provable as false. Alternatively, the court found that Coral Ridge did not sufficiently plead that SPLC acted with actual malice.[6] Because we agree that Coral Ridge failed to adequately plead actual malice, we affirm the dismissal of Coral Ridge's defamation claim.[7]

Coral Ridge did not sufficiently plead facts that give rise to a reasonable inference that SPLC "actually entertained serious doubts as to the veracity" of its hate group definition and that definition's application to Coral Ridge, or that SPLC was "highly aware" that the definition and its application was "probably false." *Michel*, 816 F.3d at 702–03. For starters, we can disregard the portions of the complaint where Coral Ridge alleged in a purely conclusory manner that the defendants acted "with actual malice" in publishing the Hate Map. Allegations

---

[6] Because the district court found that the term hate group was not provable as false, it also held that Coral Ridge did not plausibly allege that the defamatory statement was false.

[7] There is a fair debate about whether the term hate group is definable in such a way that it is provable as false. That debate is complicated in this case by the fact that SPLC put its own definition of the term on its website. In any event, our finding that Coral Ridge failed to adequately plead actual malice is sufficient to affirm the dismissal of the defamation claim. Therefore, we need not reach the district court's alternative holding that the term hate group is not sufficiently factual as to be proven true or false.

such as these amount to threadbare recitals of the elements of a cause of action, which are insufficient to state a claim. *Id.*; *see also Iqbal*, 556 U.S. at 678.

Setting those allegations aside, Coral Ridge makes two basic contentions regarding actual malice. First, it claims that SPLC's definition of hate group is so far removed from the commonly understood meaning of the term that its designation of Coral Ridge as a hate group is "intentionally false and deceptive." This statement comes very close to being a conclusory assertion of the elements of the cause of action. *Michel*, 816 F.3d at 703. In any event, Coral Ridge does not plead any facts that would allow us to infer that SPLC doubted the veracity of its own definition of the term. Moreover, the complaint states that SPLC publicly disseminates its own definition of a hate group on its website; given that, it is hard to see how SPLC's use of the term would be misleading. Regardless of the commonly understood meaning of hate group, and regardless of whether SPLC's definition is the same, the complaint did not present any factual allegations that would allow us to infer that SPLC's subjective state of mind was sufficiently culpable. *Berisha*, 973 F.3d at 1312.

Second, Coral Ridge contends that SPLC acted "with reckless disregard for the truth" in designating Coral Ridge a hate group, even under SPLC's definition of the term. But Coral Ridge pleaded no facts that would allow us to infer that SPLC seriously doubted the accuracy of designating Coral Ridge a hate group.

The complaint states that Coral Ridge "has never attacked or maligned anyone on the basis of engaging in homosexual conduct" and that "SPLC's conduct, in and of itself, would have created a high degree of awareness of the probable falsity of SPLC's declaration."[8]  Although we must accept Coral Ridge's allegations as true at this stage, bare-bone allegations like these are insufficient to show that SPLC doubted the truth of its designation.  *Michel*, 816 F.3d at 703.  Accordingly, the district court was correct to dismiss Coral Ridge's defamation claim on the ground that Coral Ridge did not sufficiently plead actual malice, and we affirm as to this issue.[9]

**IV.**

Next, we review whether the district court was correct in dismissing Coral Ridge's religious discrimination claim.  In relevant part, Title II states: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

---

[8] Coral Ridge also pleaded that SPLC intended to harm its reputation by making the designation and that its aim is to "completely destroy" hate groups.  But the actual malice standard is not about whether the speaker had evil intent or a motive arising from ill will; it is about whether the speaker subjectively doubts the truth of the publication.  *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510–11 (1991).  These allegations do not give rise to a reasonable inference that SPLC seriously doubted the accuracy of its designation.  *See Berisha*, 973 F.3d at 1304.

[9] Coral Ridge also asks us, for the first time on appeal, to get rid of the actual malice requirement.  But even if this argument were not waived, we could not grant the relief Coral Ridge seeks.  *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009).  A circuit court is not at liberty to decline to follow the decisions of the Supreme Court.  *United States v. Gibson*, 434 F.3d 1234, 1246 (11th Cir. 2006).

accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

The district court assumed without deciding that websites, like Amazon and AmazonSmile, qualify as places of public accommodation under Title II. It dismissed Coral Ridge's Title II claim primarily because it found that the AmazonSmile program did not qualify as a "service," "privilege," or "advantage" under the statute. It held in the alternative that Coral Ridge's claim failed on First Amendment grounds. And last, it found that the claim had to be dismissed because it did not adequately allege discrimination.

Coral Ridge challenges all of the district court's findings. It alleges that Amazon is liable under Title II because (1) Amazon is a "place of public accommodation," (2) the AmazonSmile program is a "privilege," "service," or "advantage" of Amazon, and (3) Amazon excluded Coral Ridge from benefiting from the AmazonSmile program because of Coral Ridge's religious views. Coral Ridge also contests the district court's finding that its interpretation of Title II "raise[s] serious First Amendment problems." It says that the First Amendment should not apply because it is ultimately the customers—not Amazon—who donate and decide what charity to donate to. Therefore, it claims, if any First Amendment rights are at issue here it would be the customers'—not Amazon's.

9

We hold that the district court was correct in finding that Coral Ridge's interpretation of Title II would violate the First Amendment by essentially forcing Amazon to donate to organizations it does not support.

As an initial matter, we disagree with Coral Ridge's position that it is the customers rather than Amazon who donate under the program. It is Amazon that is forgoing a portion of its proceeds and donating to the charities. Coral Ridge acknowledges as much in their complaint when it quotes the AmazonSmile website, which states that the "AmazonSmile Foundation will donate 0.5% of the price of eligible purchases to the charitable organizations selected by customers." Coral Ridge argues that still it is the customers who get to choose where to donate. This is true in a sense, but ignores the fact that Amazon is the party actually paying the charities. Thus the donation is Amazon's—not the customers'. With that in mind, we turn to Amazon's right to free speech under the First Amendment.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "Constitutional protection for freedom of speech does not end at the spoken or written word"; the First Amendment also protects expressive conduct. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (quotation mark omitted). "[I]n determining whether conduct is expressive, we ask whether the reasonable person would interpret it as *some* sort of message, not whether an

10

observer would necessarily infer a *specific* message." *Id.* If we find that the conduct in question is expressive, any law regulating that conduct is subject to the First Amendment. *See id.*

The parties do not dispute that donating money qualifies as expressive conduct. Indeed, it is "bedrock principle that, except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." *Harris v. Quinn*, 573 U.S. 616, 656 (2014). The question is how the facts of this case map onto that principle.

In setting out the criteria for the AmazonSmile program, Amazon expressly states that it relies on SPLC to determine which charitable organizations are eligible to participate. A reasonable person would interpret this as Amazon conveying "*some* sort of message" about the organizations it wishes to support. *Fort Lauderdale Food Not Bombs*, 901 F.3d at 1240; *see also Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995) ("Since *all* speech inherently involves choices of what to say and what to leave unsaid, one important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say." (citations and internal quotation marks omitted)). Thus, we have no problem finding that Amazon engages in expressive conduct when it decides which charities to support through the AmazonSmile program.

11

Next, we must consider whether Coral Ridge's proposed application of Title II to the AmazonSmile program is permissible under the First Amendment. The Supreme Court's decision in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston* is instructive here. 515 U.S. 557. In *Hurley*, the Irish-American Gay, Lesbian and Bisexual Group of Boston (GLIB) sued the South Boston Allied War Veterans Council (the Council), an association that organized a St. Patrick's Day parade in Boston, when the Council denied GLIB's application to have a unit in the parade. *Id.* at 561. GLIB sued in state court under a Massachusetts law that prohibited discrimination on the basis of sexual orientation "in the admission of any person to, or treatment in any place of public accommodation." *Id.* at 572 (internal quotation mark omitted). The Massachusetts Supreme Court agreed with GLIB, finding that the Council violated the state law in denying its parade-unit application. *Id.* at 563–64. In a unanimous decision, the United States Supreme Court reversed. *Id.* at 581.

The Supreme Court stated that GLIB's interpretation of the state public accommodation law was "peculiar" in that individual members of GLIB were not "claim[ing] to have been excluded from parading as a member of any group that the Council has approved to march. Instead, the disagreement [went] to the admission of GLIB as its own parade unit carrying its own banner." *Id.* at 572. The Court explained that while the state statute was generally constitutional and

12

acceptable, "the state courts' application of the statute had the effect of declaring the [Council's] speech itself to be the public accommodation." *Id.* at 573. That is, the Council's decision as to which organizations could have a unit in the parade was expressive conduct protected by the First Amendment. *Id.* The Court further reasoned that the lower court's application of the law did not advance the law's purpose of preventing discrimination in access to public accommodations. *Id.* at 578 ("When the law is applied to expressive activity in the way it was done here, its apparent object is simply to require speakers to modify the content of their expression to whatever extent beneficiaries of the law choose to alter it with messages of their own. But in the absence of some further, legitimate end, this object is merely to allow exactly what the general rule of speaker's autonomy forbids."). Because there was no other legitimate reason to apply the state statute in this way, the Court reversed the Massachusetts Supreme Court's decision on First Amendment grounds. *Id.* at 579 ("The very idea that a noncommercial speech restriction be used to produce thoughts and statements acceptable to some groups or, indeed, all people, grates on the First Amendment, for it amounts to nothing less than a proposal to limit speech in the service of orthodox expression.").

*Hurley* is analogous to this case in that Coral Ridge's proposed interpretation of Title II would violate the First Amendment. In the same way that the Council's

13

choice of parade units was expressive conduct, so too is Amazon's choice of what charities are eligible to receive donations through AmazonSmile.  Applying Title II in the way Coral Ridge proposes would not further the statute's purpose of "secur[ing] for all citizens the full enjoyment of facilities described in the Act which are open to the general public." *United States v. DeRosier*, 473 F.2d 749, 751 (5th Cir. 1973).[10]  It would instead "modify the content of [Amazon's] expression"—and thus modify Amazon's "speech itself"—by forcing it to donate to an organization it does not wish to promote.  *See Hurley*, 515 U.S. at 578, 573.[11] This we cannot do.  The law "is not free to interfere with speech for no better

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[11] The district court offered a helpful, concrete example demonstrating the negative implications of accepting Coral Ridge's interpretation of Title II:

> By way of comparison, assume that a closely held fast-food restaurant chain, whose owners are Christian and object to homosexuality based on their religious beliefs, initiates a "charity match" program.  Under the program, consumers who purchase a certain number of sandwiches may donate up to $5.00 to the charity of their choice, subject to certain restrictions, and the corporation will match the donation.  According to Coral Ridge's interpretation of Title II, the fast-food chain could be compelled—over their objection—to match donations to, for example, a church whose central mission is promoting the Christian acceptance of homosexuality; the Church of Satan; or any number of religious organizations whose purpose and activities run directly contrary to the business's deeply held convictions.  Even though the consumer initiated the transaction that would ultimately lead to the business donating money, it is still the business's money being donated, and the business retains its say as to where it goes.

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1303 (M.D. Ala. 2019).

14

reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Id.* at 579.

Therefore, because Coral Ridge's proposed interpretation of Title II would infringe on Amazon's First Amendment right to engage in expressive conduct and would not further Title II's purpose, we affirm the district court's dismissal of this claim.[12]

## V.

In sum, we find that Coral Ridge has not adequately alleged a state law defamation claim and that its proposed interpretation of Title II would violate the First Amendment.  Accordingly, we affirm the district court's dismissal of Coral Ridge's complaint.

**AFFIRMED.**

---

[12] We have not determined if non-physical spaces, like websites, qualify as places of public accommodation under Title II.  However, in *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1277 (11th Cir. 2021), we held that websites are not places of public accommodation under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §12182.  While we recognize that the relevant statutory language in the ADA is similar to that of Title II, we do not decide whether *Gil* is applicable here because we find Coral Ridge's claim fails regardless on First Amendment grounds.